## TEXAS PUBLIC UTILITIES CORPORATION et al. v. HOLLAND et al.

No. 13927.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 25, 1938.

Rehearing Denied Jan. 27, 1939.

Cantey, Hanger, McMahon, McKnight & Johnson, R. K. Hanger, and James C. Wilson, Jr., all of Fort Worth, for appellants.

McCall & McCall and Grindstaff, Zellers & Hutcheson, all of Weatherford, for appellees.

SPEER, Justice.

This is an appeal from an election contest. Texas Public Utilities Corporation and B. F. Cherry, a resident citizen, property owner and tax payer of the City of Weatherford, Texas, hereinafter referred

to as contestants, instituted this suit against G. A. Holland, the mayor of the City of Weatherford, Texas, Frank Fulgham, as county attorney of Parker County, Texas, Lawrence Edwards and Conrad F. Russell, Commissioners of the City of Weatherford, each in their representative capacities and not individually, to whom we shall refer as contestees. Before the cause was heard, other parties succeeded certain of the named contestees, in their respective capacities and under order of the court were substituted as contestees in lieu of those named, but this cannot affect the points involved and we shall not give it further notice.

Contestants filed a very comprehensive petition, but insofar as is necessary to discuss the appeal, the following brief summary of their allegations will suffice. It is alleged that the City of Weatherford had duly ordered an election to be held, under Articles 1111 to 1118, R. C. S., both inclusive, Vernon's Ann.Civ.St. arts. 1111–1118, to determine if said city should issue Revenue Bonds in the sum of $250,000, for the purpose of purchasing or constructing and putting in operation an Electric Light Power and Distribution Plant. At the same election, the City would determine if it should likewise issue its Revenue Bonds in the sum of $350,000, for the purpose of purchasing or constructing and installing a Water Supply and Distribution Plant. The petition refers to the proposed Light and Power project as Proposition No. 1, and to the Water project as Proposition No. 2.

Allegations are made that the election was held, and the purported result thereof declared by the City Commission, on November 29th, 1937, declaring both propositions had carried; that the number of votes cast for Proposition No. 1 (the light and power project) were 474, and against, 229; that the number of votes cast for Proposition No. 2 (the water works project) were 453, and against that proposition, 217.

It is alleged that contestant, Utilities Corporation, is the owner of a franchise from the City of Weatherford, under which it owns and maintains suitable and efficient plants within said city, to furnish to the residents thereof electric power and water for all necessary purposes, and that these utilities have been erected and maintained at a large expense, and that its property rights will be materially affected if the City of Weatherford should construct and

maintain similar projects within said city, and that its interests are such that it may properly contest the validity of any election held within said City of Weatherford to determine those questions, when such elections are not held according to the laws of the State, as made and provided in such cases.

Allegations are made that at such elections as the one under consideration, only persons otherwise qualified, and who own real estate within the city, and who have duly rendered same for taxes, were permitted under the law to vote, as provided by article 2955b, Vernon's Ann.Civ.St.; that said required qualification was disregarded by the election judges, and by the tax assessor and collector who furnished to the judges of the election the list of qualified voters; that the purported list of qualified voters contained 483 names and that 210 of those were disqualified to vote, they having failed to render for taxes in said city any real estate for taxation, and for other causes shown which disclosed their disqualification as electors.

It was further alleged that persons who were otherwise qualified electors, and owned property, either personal or real, within the City of Weatherford, as shown by the tax rolls thereof, whether same had been rendered for taxation by the owner or not, were illegally permitted to vote in said election. That such acts constituted an erroneous construction of the law and was a flagrant disregard for its provisions as contained in Art. 6, § 3a, of the State Constitution, Vernon's Ann.St., and the statutory provisions thereunder. That under such conditions, the result of said election could not be legally declared as a fair expression of the will of the qualified voters within said City of Weatherford, on the propositions then and there submitted, and the result of said election and the declaration thereof were null and void and should be so declared by the court hearing the contest. It was alleged that the list furnished by the Tax Collector to the Election Judges contained the names of 483 purportedly qualified electors, that by the returns made, 708 votes were cast; that 261 illegal votes were cast in favor of each of the propositions voted upon. The number of alleged illegal votes are claimed to have been cast by persons who had not paid a poll tax to one or the other of State and County, or the City of Weatherford, but were legally liable therefor; those who had not rendered for taxes either real estate or personal property, with

the State and County, or the City of Weatherford; others were not residents of said city and that one elector voted more than once. The names of those alleged to have voted illegally under the several conditions are given. It is alleged that if said illegal votes had not been cast and counted in favor of said propositions, the final result would have been different and would have been so declared by the Commissioners.

Prayer was for the court to declare the election null and void, and in the alternative, for the court to recount the ballots, discarding those cast illegally, and to declare the result from such count.

Contestees answered with general demurrer and special exceptions, which do not appear to have been called to the court's attention, and by general denial and special answers to each of contestants' material allegations. By these special answers, it is claimed that those who voted in the election without poll tax receipts were otherwise qualified and were exempt from payment of a poll tax; that other electors whose votes were challenged by contestants were resident property owning tax payers in said City of Weatherford, who had rendered their property for taxation; that if such property owners did not make out a list, sign, swear to it and deliver it to the tax assessor of the City of Weatherford, said property was duly assessed by such assessor and placed on the rolls and a liability thereby created for the taxes assessed against the owners, and the right to vote in said election was thereby conferred upon said owners, under article 2955a and other provisions of the State Constitution and our Civil Statutes. That the City of Weatherford was a Home Rule City under the Constitution and laws of this State.

A trial was had to the court and judgment was rendered denying the contest; hence, this appeal.

Contestants' contentions are covered by thirteen propositions, based on assignments of error brought forward. Boiled down, these propositions present for our determination two questions. They are: (1) Did the trial court err in holding in such elections as this that an elector otherwise qualified to vote need not be the owner of *real estate,* situated within the City of Weatherford, Texas, which had been duly rendered for taxes, before he could legally vote? (2) Did the trial court err in holding that all persons possessing the legal qualifications of electors, who own either

*personal or real property* within said city, and which property appeared on the tax rolls, whether rendered by the owner by listing, swearing to it and delivery to the assessor, or placed thereon by the assessor after the owner had failed to list same under his oath and deliver to the assessor, were entitled to vote?

The question of whether or not the court should have opened the ballot box is also raised, but we think the foregoing points are controlling.

The statement of facts before us consists of nearly five hundred pages, about half of which is made up of exhibits, showing photostatic copies of rendition and assessment sheets, of those whose right to vote was challenged. There is no serious conflict in the facts proved upon the trial, but only questions of law are involved here. As we view it, a proper construction of the provisions of Art. 1111 et seq., R.C.S., Vernon's Ann.Civ.St. art. 1111 et seq., and arts. 2955a and 2955b, Vernon's Ann. Civ.St., is required, and the alleged errors assigned are dependent upon such constructions.

Insofar as applicable here, Art. 1111, R.C.S., Vernon's Ann.Civ.St. art. 1111, reads: "All cities and towns including Home Rule Cities operating under this title shall have power to build and purchase, to mortgage and encumber their light systems, water systems, * * * and the franchise and income thereof and everything pertaining thereto * * * and to evidence the obligation therefor by the issuance of bonds, notes or warrants, and to secure the payment of funds to purchase same. * * * *No such obligation of any such systems shall ever be a debt of such city or town, but solely a charge upon the properties of the system so encumbered, and shall never be reckoned in determining the power of any such city or town to issue any bonds for any purpose authorized by law.*" (Emphasis ours.)

Article 1114, Vernon's Ann.Civ.St. reads in part: "Every contract, bond, note or other evidence of indebtedness issued or included under this law shall contain this clause: *'The holder hereof shall never have the right to demand payment of this obligation out of any funds raised or to be raised by taxation.'*" (Emphasis ours.)

Article 1114a, Vernon's Ann.Civ.St., reads: "Projects financed in accordance with this law are hereby declared to be

self liquidating in character and supported by charge other than by taxation."

Article 2955a, Vernon's Ann.Civ.St., omitting immaterial parts, reads: "When an election is held by any * * * municipal corporations * * * for the purpose of issuing bonds or otherwise lending credit, or expending money or assuming any debt, only qualified electors who own taxable property in the * * * city, town or village where such election is held, and who have duly rendered the same for taxation, shall be qualified to vote and all electors shall vote in the election precinct of their residence."

The foregoing statute contains the same language found in Art. 6, sect. 3a, of the State Constitution, Vernon's Ann.St.

Article 2955b, Vernon's Ann.Civ.St., provides: "Whenever an election is called in the State of Texas or any political subdivision thereof or in any defined district for the purpose of authorizing the issuance of bonds which place a lien upon real estate, it shall be the duty of the Tax Collector of the county or political subdivision or defined district to furnish to the Election Judges a certified list of the owners of real estate in said county or political subdivision of the State in which said election is to be held who have rendered the same for taxes, as shown on the tax rolls; said list of real estate owners shall determine the qualification of the electors to participate in said election."

The right to vote in such elections, however, is determined by the provisions of Art. 2955a, above quoted. The language of that article is identical with the words of sect. 3a, Art. 6, of the State Constitution. It is there said, "only qualified electors who own taxable property," in the district, may vote. Nothing is said there to confine the nature of the taxable property to real estate. The clause, "who have duly rendered same for taxation", will be discussed under other assignments.

The proposition made in contestants' brief, which raises the first point referred to by us above, is as follows: "The trial court erred in concluding as a matter of law that in elections of this kind it is not necessary that to be a qualified voter, a voter should be the owner of real estate located in the City of Weatherford."

We do not believe there is any merit in this contention. Since the adoption of Section 3a, Art. 6, of the Constitution, on November 8th, 1932, Arts. 1111, 1114 and 1114a, R.C.S., Vernon's Ann.Civ. St. Arts. 1111, 1114, 1114a, and Arts. 2955a, and 2955b, Vernon's Ann.Civ.St., have been passed by the Legislature. It is conceded by all parties in their pleadings that the election was ordered, held and determined under and by virtue of Art. 1111 et seq., and by provisions of the City Charter, not in conflict therewith. Under the assignment here being considered, the controversy is as to who was entitled to vote at the election. Contestants claiming only qualified voters who owned *real estate* within the City of Weatherford, who had rendered it for taxation, were qualified, and contestees contending that such qualified voters as owned either *personal property* or real estate in the City, who had rendered it for taxation, were entitled to vote.

It will be observed that by Art. 1111, referring to bonds issued as a result of an election for the purposes therein named, it is provided such bonds or obligations should never be a debt of such city or town, but solely a charge upon the properties of the system encumbered, and by Art. 1114 it is specifically stated that the bonds or obligations issued as a result of the election should contain a provision that the holder of the bond or obligation should never have the right to demand payment out of any funds raised or to be raised by taxation. The obligations are secured only by a lien on the utility named, and the income therefrom, after certain deductions for expense of operation and maintenance and some other enumerated items found in Art. 1113, Vernon's Ann.Civ.St.

City of Richmond v. Allred, Atty. Gen., 123 Tex. 365, 71 S.W.2d 233, was an application to that court to require the Attorney General to approve a bond issue, when it was rejected because the transcript submitted failed to show that only electors who owned taxable property were permitted to vote at an election to determine if the city would issue bonds to purchase a Water System.

The election was held under Constitution Art. 6, § 3a, and Articles 1111 to 1118, Vernon's Ann.Civ.St., as was the election in the case at bar. In a Per Curiam opinion, the application was denied, holding that although the issuance of revenue bonds issued under Art. 1111 et seq. does not create a debt within the meaning of Constitution, Art. 11, §§ 5 and 7, Vernon's

Ann.St., it was said [page 234]: "Undoubtedly an election for the issuance of such bonds is held for the purpose of determining the expenditure of money." The further effect of the holding was that the transcript of the election would necessarily have to show that only property owning tax paying electors were permitted to vote. Nothing is said in that opinion which means, nor was it contended by counsel, that the voting should be confined to electors who owned real estate within the City subject to taxation, duly rendered for taxes.

By Article 2955b, as referred to above, it will be seen that whenever an election is called by a defined district for purposes of authorizing the issuance of bonds *which place a lien upon real estate,* the tax collector shall furnish to the Election Judge a certified list of the owners of real estate within the defined district, who have rendered same for taxes, and that such 'list shall determine the qualifications of the electors to participate therein. It is only by virtue of the provisions of this article that contestants claim that voting should have been confined to persons who own real estate in the city, and had rendered same for taxation.

In Border et al. v. Abell, County Atty., Tex.Civ.App., 111 S.W.2d 1186, it was held that the failure of a county tax collector to furnish election judges a certified list of real estate owners, in an election to determine if certain bonds should be issued, did not invalidate the election, in the absence of allegations of fraud or misconduct, or that failure to furnish such list affected a fair result of the election. It was further said that doubt was expressed as to the applicability of Art. 2955b, which provides for the furnishing of such a list in that case, from which list the qualifications of voters should be determined. Citing Art. 6, § 3a, Texas Constitution; Vernon's Ann.Civ.St. arts. 2955a, and 2955b; and Campbell v. Wright, Tex.Civ. App., 95 S.W.2d 149.

For the reasons hereinabove shown, the assignment is overruled.

Legal questions involved in the second point mentioned by us above, have given us much concern. It involves a construction of Art. 2955a, Vernon's Ann.Civ.St., wherein it is provided that in such elections as this, "Only qualified electors who own taxable property * * * in the city, town or village where such election is held, and *who have duly rendered the same for taxation,* shall be qualified to vote * * *." (Italics ours.)

Contestants insist that the italicised clause means that even to concede that an elector need not be the owner and tax payer of real estate in the city, duly rendered for taxes, and that he may vote if he is the owner of personal property in the city, and otherwise qualified, the personal property must be duly rendered for taxes. That there is a distinction between the expressions "property duly rendered for taxes" and "property duly assessed for taxes". Contestees contend that since under either condition the owner and his property are as surely bound for the payment of the tax as he would be under the other, the formal rendition through means provided by statute becomes only directory and not mandatory, and if the property be shown to have been legally assessed by the assessor, the owner's right to vote in such elections as this is not taken away. The trial court adopted the views of contestees.

Upon request the trial court filed findings of fact and conclusions of law. He found that thirty illegal votes were cast at the election, but that that number was insufficient to change the result as declared by the City Commissioners. He further found that the Election Judges were furnished with a list of all persons who had paid a poll tax to the City of Weatherford, a city containing less than ten thousand population, and that a list was likewise furnished of property owners whose names appeared on the tax rolls for the year 1937, and that there was a substantial compliance with all the provisions of law pertaining to such elections.

The court concluded as a matter of law, in paragraph 3, in effect, that to be a qualified voter in such elections as the one before him, that the elector need not be the owner of real estate subject to taxation in the City of Weatherford, since the bonds to be voted were to be paid solely from the revenues of the respective plants mentioned in the two propositions, but that the owners of personal property subject to taxation in the City, when duly rendered for taxes, and he is otherwise qualified, entitled him to vote.

By conclusion four, the court found that to constitute a due rendition of property, it was not necessary that the owner should personally sign and swear to and file a

rendition blank of his property, nor was it necessary that the assessment roll should show his name, to entitle him to vote at said election. That there is no fraud in the election, either alleged or shown.

By conclusion of law No. 5, it was found that if a property owner otherwise qualified, had failed to make out, under oath, and file with the assessor of taxes a list of his taxable property, and the assessor should place said property on the rolls, the owner was liable for the payment of the taxes so assessed, then the owner is deemed to have duly rendered his property for taxation without regard to the particular manner or form through which the rendition is made.

Upon these conclusions the court based his final judgment, that all persons who voted in said election were qualified, as such, except thirty whose names were enumerated in the court's findings of fact.

It is upon these findings and conclusions that a group of contestants' propositions are based, and relied upon, to show that the election was void. It is unquestionably true that a large number of persons were permitted to vote in this election who did not make out a list of their property, swear to it and file with assessor of taxes, and that when they failed to do so, the assessor made up the assessment and placed it upon the rolls for taxation, and that in some instances where the assessor knew the property was owned jointly by two or more persons and was either listed and rendered by one, or when not so listed but assessed by the assessor, the names of the real owners were all placed on the voting list furnished to the Election Judges.

The duties required of the tax assessor and collector of the City of Weatherford, as shown by its charter, are the same as those required of county assessors and collectors. The essential requirements of the duties of county assessors are contained in the following statutory provisions:

Article 7161, R.C.S., reads:

"Each person required by law to list property shall make and sign a statement, verified by his oath, as required by law, of all property, both real and personal, in his possession, or under his control, and which he is required to list for taxation, either as owner or holder thereof * * *".

Article 7189, R.C.S., provides that the assessor shall within the time there pro-vided, assess all taxable property in the county, "by calling upon the person * * * and listing the property required by law in his name, and requiring such person to make a statement under said oath [such as set out in Art. 7184, R.C.S.] of such property in the form hereinafter prescribed."

By Article 7190, R.C.S., it is provided: "Should any property be listed or assessed for taxation after April 30th of any year, or should the assessor of taxes or his deputy fail to administer the requisite oath or attest the same in the mode prescribed by law, or should the party rendering property for taxation fail to subscribe to the list, yet the assessment shall, nevertheless, be as valid and binding to all intents and purposes as if made in strict pursuance of law."

Article 7193, R.C.S., reads: "In all cases of failure to obtain a statement of real and personal property from any cause, the assessor of taxes shall ascertain the amount and value of such property and assess the same as he believes to be the true and full value thereof; and such assessments shall be as valid and binding as if such property had been rendered by the proper owner thereof."

The means provided by law to see that all taxable property within the respective jurisdictions of the State should bear its proportionate part of governmental expense are fair and their wisdom has never been successfully attacked. The purpose of the State and the various taxing bodies has been to see that none escape; any other form would be manifestly unfair to those whose property found its place on the tax rolls, by whatever means provided by law. First of all, an owner of property is given the right and it is his patriotic duty to take the initiative by listing his property, stating its true value under oath, and furnishing it to the assessor of taxes. It is presumed that he will be fair in such rendition, and for his diligence he is rewarded with the right to thereby suggest the values at which he is willing to be taxed. He knows, however, that if the values fixed by him are too low, a Board of Equalization will raise those values to correspond with other property of like kind, to further the aim of the taxing body that taxes shall be equal and uniform, both in values and the rate to be applied. The purpose of the privilege thus conferred upon property owners is emphasized by the provisions

of Art. 7186, R.C.S., which authorizes the assessment of a penalty upon the assessor if he fails or neglects to co-operate with a property owner in his effort to take advantage of this condition, in administering the oath thereto, when the owner attempts to render his property for taxes.

However, as seen by Art. 7193, quoted above, if for any cause the owner does not take advantage of the privilege given to thus render his property and have the benefits pointed out, it becomes the duty of the assessor to ascertain the amount and value of the property and assess it according to his own ideas of values, under which condition the assessment so made is as binding upon the owner and the property assessed as if it found its way to the tax rolls by means of the first provision discussed. The record before us discloses that many property owners and tax payers in the city of Weatherford had habitually failed from one cause or another to list their property, showing its value, and swear to it and file with the assessor of taxes, with full knowledge that the assessor would, by virtue of the statutes and the ordinances of said city, list and assess their property at such values as to him seemed fair and right; we may assume from this that they were satisfied with such assessments and were willing to abide by them, preferring this method to the optional right of rendering at their own proposed values, subject to review by the Equalization Board.

The point before us turns upon the question of whether or not property has been rendered for taxation, when it has been placed upon the rolls by the assessor under the provisions of law named, when the owner has for any cause failed to make the list, swear to it and furnish it to the assessor. This is true because Art. 2955a, above quoted, provides as a requisite to voting in such elections as the one before us, that only qualified voters who own property in the described district, who have duly rendered the same for taxation, shall participate.

If the assessment made by the assessor is a legal rendition in point of law, then the spirit of the statute has been met and he should be allowed to vote, otherwise he should not. We believe that since either means of forming a basis for the enforcement of the collection of the tax against the owner and his property accomplished the same result, the permission by the owner for the assessor to make the assessment as provided by law, is equivalent to a rendition by him, by means of the statutory provisions first given. We therefore hold that so much of the statutory provisions which prescribe how property shall be rendered for taxes by the owner, by listing, swearing to it and furnishing to the assessor, is directory; it carries with it no penalty for having failed, and provides another legal means for collecting the tax, when he does fail. If we are correct in these conclusions, the owner has "duly rendered" his property for taxes when it is placed on the rolls by the assessor in a legal manner, with the implied permission of the owner, in preference to some other means provided.

There are several reasons why such a construction should be placed upon these statutes. To hold otherwise, we think, would force a strained and unreasonable construction upon the laws which provide a means by which taxes may be assessed, levied and collected. It would deprive property owning tax paying citizens of their constitutional privilege of voting on measures which are to determine the expenditure of moneys by the political subdivision of the State government in which they live and maintain their property. City of Richmond v. Allred, Atty. Gen., supra. If there were several joint owners of property, such as heirs, partners or the like, and one of the number should render it strictly as contended for by contestants, and did not disclose the names of all owners, the other joint owners, although they were otherwise qualified to vote, would be thus deprived of that right. Article 7161, R.C.S., above referred to, does not require such joint owner, holder, guardian, parent, trustee, partner or other named representative, to disclose the name or names of all owners therein. The tax thus rendered would create a valid lien against the real owner's property, and he would be deprived of a vote; he would be taxed without representation or voice in the case. Included in the 261 alleged illegal votes cast, there were approximately 170 permitted to vote who were not shown by the assessment and rendition sheets to have personally listed their property and swore to it and delivered it to the assessor, but whose property had been assessed by the assessor, or those whom he knew to be joint or part owners of property rendered or assessed by or to other persons who likewise had an interest therein.

The only decision by an appellate court of this State that has been called to our

attention, which passes upon the question here involved, is the case of Campbell, Mayor et al. v. Wright, County Attorney, Tex.Civ.App., 95 S.W.2d 149, by the San Antonio Court. That court discusses freely the provisions of Sect. 3a of Art. 6 of the Constitution, as amended, in 1932, and the statutory enactments thereunder, and especially the clause which reads: "Who have duly rendered the same for taxation." By one reference made to that clause it was said [page 152]: "It was the real intent of the citizens in adopting such constitutional amendment to afford some measure of proper protection to the acquisition and ownership of property in this state. A fair and practical analysis of such amendment to the Constitution as well as all statutes enacted thereunder or applicable thereto, or regulating elections to be held thereunder, show conclusively that the true intent and purpose of all such enactments was to encourage and safeguard the ownership of property and the payment of taxes by thrifty and law-abiding citizens, and not to hamper, discourage, or restrict the rights and privileges of such citizens in the lawful acquisition, ownership, and protection of property."

In that case, as in the one before us, the right of those to vote who had not signed and sworn to a rendition sheet, but whose property had been placed on the rolls by the assessor under statutory provisions, was challenged. On this point, the court said:

"An elector who in all other respects is fully qualified to vote at an election, such as was held in this case, cannot lawfully be deprived of his constitutional right to vote, if his property is in fact on the tax rolls and he is liable for the payment of such taxes, even though he did not personally make the rendition in strict accordance with the general or special statutes governing the rendition of property for taxes, or those relating to the collection of such taxes.

"As against the constitutional right of the citizen to vote, all such statutes are directory. All such statutes were enacted for the purpose to which they specially relate, and not for the purpose or to have the effect of depriving the good-faith citizen, in the absence of fraud or wrongdoing, of his fundamental rights as an elector. If the property of the citizen is on the tax rolls and he is liable for the taxes assessed, in regular order, he has 'duly rendered' same, in so far as his right to vote

is concerned, without regard to the particular manner of form through which the rendition was made." The court cites authorities in support of its holding.

We are cited by contestants to 40 Tex. Jur., sects. 83, 84, 86 and 91, under the heading of Taxation. These are mainly announcements of statutory provisions relating to the rendition of property for taxation, but do not reach, we think, the point involved here, that of when has property been rendered for that purpose? We are also cited by contestants to the case of Republic Ins. Co. v. Highland Park Ind. School Dist., Tex.Civ.App., 57 S.W.2d 627. Recovery for alleged taxes due the School District was denied in that case, because there was no legal assessment in the first place. This holding was grounded upon the fact that the Insurance Company did in fact prepare and tender upon the official forms, a list and inventory and assessment of its property to the tax assessor, with certain deductions claimed by it, which was refused by the collector, whereupon the latter assessed the property in the manner provided by law when the property owner failed to do so. It was held that the assessor had no right to assess the property under those conditions, but was required to accept the listing of the owner, and pass it on to the Board of Equalization, with his recommendations thereon. The assessment by the assessor being an illegal one, it was held none was made; hence, the failure to enforce payment. We do not consider that the point before us was involved in that case.

We hold, as did the court in the case of Campbell v. Wright, supra, that there being no listing and attempted formal rendition by the property owners and tax payers in the City of Weatherford, but that valid assessments being made by the tax assessor, enforceable against the owners and their property, the property was "duly rendered for taxes" as contemplated by the law, and that such owners, being otherwise duly qualified, were entitled to vote in the election here contested.

■ Complaint is made by other assignments that the court erred in refusing to open the ballot boxes and withdraw therefrom the list of voters furnished to the Election Judges, showing those supposed to be qualified to vote in said election. Such a list for use by contestants in procuring testimony, if it existed, to enable them to prosecute their suit, was not a duty owed by

the officials whose duty it was to prepare such a list. The list of the names of all those who voted was furnished by the poll lists, and the county and city records were open to contestants for comparison of names on the poll list; also all poll tax records were available, as were the assessment sheets in the offices of both City and County assessors. Two hundred or more of the latter were introduced in evidence, and are contained in the record here. There was no allegation of fraud upon the part of anyone, either in tabulating the votes cast or in declaring the result. Our courts have guarded the sacredness of the secret ballot with jealous care, and to have opened the ballot box and removed a part of its contents, such as the list of voters furnished, no doubt would never have disclosed the nature of the vote cast by any elector, but for the effect it has upon the voter, not in a position to know what has happened, the ballot box should not be opened for any purpose, except when an absolute necessity arises upon a contest showing that to, be the only means of arriving at the true result of an election. We see no error in the refusal by the court, and overrule the assignments.

We find no error in the actions of the trial court assigned here, and the judgment refusing the contest is affirmed.