

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

GROVER SELLERS
~~WILLIAMSON~~
ATTORNEY GENERAL

Hon. B. T. Walters
County Auditor
Smith County
Tyler, Texas

Dear Sir:

Opinion No. 0-5862
Re: Filing suits for the collection
of delinquent personal or insol-
vent taxes under the provisions
of Article 7297, R.C.S.

You submit for the opinion of this department certain questions contained in your letter of February 10, which reads as follows:

"The filing of suits in the Justice and County Courts for the collection of delinquent personal or insolvent taxes due to the State and County for the past several years in contemplated by this County, and in this connection I wish to submit the following questions for your opinion:

"1. Would the provisions of Article 7297, Revised Civil Statutes, 1925, apply in case of suits filed for the collection of taxes on personal property regularly assessed each year by the Tax Assessor and placed on the tax roll for that year, either on the unrendered or rendered portion thereof, where the combined total of such taxes sued for does not exceed the sum of $25.00, or does that Article apply to suits brought to collect taxes on personal property discovered by the Tax Assessor-Collector to have been unrendered and omitted from the roll for previous years and back assessed for such omitted years?

"2. Does the statutes vest the Tax Assessor with authority to add to a signed rendition such personal property known by him to be owned by the individual making the rendition subject to taxation in the County, when that individual has omitted same from his rendition. If, in your opinion, the Tax Assessor does not have the authority to add the omitted personal property, does he have the authority to refuse the signed, but incomplete, rendition?

Your first question involves the construction of Art. 7297, R.C.S., which reads as follows:

"The district or county attorney of the respective counties of this State, by order of the commissioners court, shall institute suit in the name of the State for recovery of all money due the State and county as taxes due and unpaid on unrendered personal property; and in all suits where judgments are obtained under this law, the person owning the property on which there are taxes due the State and county shall be liable for all costs. The State and county shall be exempt from liability for any costs growing out of such action. All suits brought under this article for the recovery of taxes due on personal property shall be brought against the person or persons who owned the property at the time such property should have been listed or assessed for taxation. No suit shall be brought until after demand is made by the collector for taxes due, and no suit shall be brought for an amount less than twenty-five dollars. Such suits may be brought for all taxes so due and unpaid for which such delinquent tax payer may be in arrears for and since the year 1886."

Your question No. 1 may be subdivided into two questions:

(1) Where assessments have been regularly made by the Assessor each year, may suits be filed as authorized under said article when the combined total of delinquent taxes due and sued for is less than $25.00?

(2) Does said article apply only to suits brought to collect delinquent taxes on personal property discovered by the tax assessor to have been unrendered and omitted from the tax rolls for previous years and by the assessor assessed for such omitted years?

This article of the statute as observed by its plain terms does not purport to deal with delinquent taxes on personal property which has been regularly assessed either upon the rendered or unrendered rolls by the assessor. The statute says "for the recovery of all money due the State and County as taxes due unpaid on <u>unrendered</u> personal property: . . . all suits brought under <u>this Article</u> for the recovery of taxes due on personal property shall be brought against the person or persons who owned the property at the time such property should have been <u>listed</u> or <u>assessed</u> for taxation." Thus it seems clear to us that this article of statute deals only with <u>unrendered</u>, <u>unlisted</u> and <u>unassessed</u> personal property. We do not mean to say, however, that suit for such delinquent taxes on personal property as this

article of the statute authorizes may be brought without an assessment by the assessor; quite to the contrary, as we point out in our answer to the second part of your first question to follow. In no event can suits be brought under this article of the statute where the combined amount sued for is less than $25.00. This is expressed in the plain language of the statute. (Emphasis added)

The answer to the second part of your question No. 1 brings us to a more detailed consideration of the construction to be given Article 7297, R.C.S., in its general application as the courts have construed it. It is apparent on the face of it that the article deals with a method of enforcing the collection of "taxes due and unpaid" on unrendered personal property, with the limitation of course that no suit shall be brought for less than $25.00, as we have said in answer to the first part of your question.

Article 7297 here under consideration was formerly Article 5212a, R.C.S., 1895, and was first construed in the case of Connell v. State, 55 S.W. 980, which was a suit for delinquent taxes on personal property. In that case the court said:

". . . This suit was evidently brought under article 5212a, which makes it the duty of the district or county attorney, by order of the commissioners' court, to institute in the name of the state a suit to recover all money due the state and county as taxes on unrendered personal property. It is further provided in that article that all suits for the recovery of taxes due on personal property shall be brought against the person or persons who owned the property at the time the same should have been listed or assessed for taxation. Our construction of this article, however, is not that it was intended to create any liability for taxes, but only to provide an additional method of collecting taxes from the persons already liable. That is to say, the taxes are not 'due' from the persons sued within the meaning of this Article, until there has been a valid assessment against him, either as known or unknown owner. . . ."

This article was subsequently reenacted and codified as Article 7661, R.C.S., and again came up for construction in the case of State v. Cage, 176 S.W. 928. This was also a suit by the State for delinquent taxes on personal property, not rendered by the owner and assessed as such by the assessor on the unrendered rolls. It must be kept in mind that while the office of tax assessor is a constitutional office, the Constitution does not define his powers and duties; but the Legislature, as it may do under the Constitution, has conferred certain

duties and powers upon him, beyond which he cannot go. One of these limitations is that he cannot assess personal property which has been unrendered and omitted from the assessment rolls for more than two years prior to the time he discovers such omission. This is clearly the intent of Article 7208, R.C.S. In other words, the tax assessor is without authority to list and assess personal property theretofore unrendered by the owner, except for the two years immediately prior to the discovery of the omission from the rolls. This is made plain in the case of State v. Cage, supra, in the following language:

> "The provision in article 7661 'that no suit shall be brought until after demand is made by the collector for taxes due' necessarily destroys the contention that by that article a right of action exists without an assessment, because the tax collector could not make a lawful demand for taxes due until the amount of such taxes has been first determined by an assessment of the property for taxation. We are of the opinion further that that article cannot be construed as impliedly authorizing an assessor to assess personal property for any year back to the year 1886, for, if it is so construed, it would repeal by implication, or else render useless, article 7566. . . . We are of the opinion further that it would be a strained construction of article 7661 to say that in enacting it the Legislature intended thereby to extend the power of the assessor to assess delinquent personal property back to the year 1886. Our construction of article 7661 is that no more was intended than that suit should be instituted for collection of such delinquent taxes only as had been properly levied and assessed.

> "We think it clear that by article 7566 it was intended that at any time after the enactment of that statute the assessor could assess such personal property which had been omitted for two years prior to the time the assessor discovers such omission, and we overrule appellant's contention that by that article two years prior to its enactment was made the period to which all assessments of personal property thereafter made could extend."

In brief, the duty imposed upon the district or county attorney to file suits under Article 7297, supra, when ordered to do so by the commissioners court presupposes a pre-existing valid assessment by the assessor of such personal property, in the absence of which no right of action exists, for as said in the case of State v. Cage, surpa, said article provides: "That no suit shall be brought until after demand is made by the collector for taxes due," which necessarily destroys the contention

that by said article a right of action exists without an assess-
ment, because the tax collector could not make a lawful demand
for taxes due until the amount of such taxes has been first deter-
mined by an assessment of the property for taxation.  Moreover
this same case is an authority for the limitation placed upon
the assessor by the two year period prior to his discovery of
the omission of such personal property from the tax rolls in
making his assessment of such property.  This is found in the
following language:

> "We are of the opinion further that that article
> could not be construed as impliedly authorizing the
> assessor to assess personal property for any year back
> to the year 1886, for, if it is so construed, it would
> repeal by implication, or else render useless, Article
> 7566 (now Article 7208). . . We are of the opinion fur-
> ther that it would be a strange construction of Article
> 7661 to say that in enacting it the Legislature in-
> tended thereby to extend the power of the assessor to
> assess delinquent property back to the year 1886."

In summing up the court said:

> "Our construction of Article 7661 (now Art. 7297)
> is that no more was intended than that suit should be
> instituted for collection of such delinquent taxes only
> as had been properly levied and assessed."

This case further makes clear that by Article 7566 (now
Art. 7297) it was intended that any time after the enactment of
that statute the assessor could assess such personal property
which had been omitted for two years prior to the time the assessor
discovered such omission, and not otherwise.

Passing now to the consideration of your second question,
we have impliedly answered it in our discussion of the first ques-
tion submitted by you, but to be more specific we direct  your
attention to other provisions of the statute dealing with the
duties and powers of the assessor in assessing unrendered prop-
erty, which of course comprehends property intentionally or
inadvertently omitted by the owner from his rendition.  Articles
7192-7193, R.C.S., covers such situations.  They read as follows:

> "In every case where any person whose duty it is
> to list any property for taxation has refused or neglected
> to list the same when called on for that purpose by the
> assessor of taxes, or has refused to subscribe to the
> oath in regard to the truth of his statement of property,
> or any part thereof, when required by the tax assessor,
> the assessor shall note in a book the name of such person

who refused to list or to swear; and in every case where any person required to list property for taxation has been absent or unable from sickness to list the same, the tax assessor shall note in a book such fact, together with the name of such person.

"In all cases of failure to obtain a statement of real and personal property from any cause, the assessor of taxes shall ascertain the amount and value of such property and assess the same as he believes to be the true and full value thereof; and such assessment shall be as valid and binding as if such property had been rendered by the proper owner thereof."

In construing the above Article 7193, Judge Speer of the Fort Worth Court of Civil Appeals, in the case of Texas Public Utilities Corporation v. Holland, 123 S.W. (2d) 1028, said:

"However, as seen by Art. 7193, quoted above, if for any cause the owner does not take advantage of the privilege given to thus render his property and have the benefits pointed out, it becomes the duty of the assessor to ascertain the amount and value of the property and assess it according to his own ideas of values, under which condition the assessment so made is as binding upon the owner and the property assessed as if it found its way to the tax rolls by means of the first provision discussed. . . ."

To the same effect is the holding in Town of Pleasanton v. Vance, 4 S.W. (2d) 247, (San Antonio Court of Civil Appeals) from which we quote as follows:

". . . While it is true that the law makes it the duty of the owner to render his property for taxation (article 7152, Revised Statutes 1925) it is also the duty of the assessor to render it in cases where the owner fails from any cause to do so. Article 7193, Revised Statutes 1925."

The case of Ferguson, et ux. v. Steen, Tax Assessor, et al., 293 S.W. 318, (El Paso Court of Civil Appeals) affirmed the right of the assessor, by virtue of Articles 7190, 7192 and 7193, R.C.S., to assess property omitted from the owner's rendition. The property owners in this case rendered their interest in the surface of the land involved, but refused to render the mineral or royalty interest. The court said:

". . . We think, under the authority of articles 7190, 7192 and 7193, Revised Statutes of 1925, the tax

assessor had the right to assess appellants' royalty
interest in said land, as the court found he did do,
at $30,870. . . . . "

True, the royalty or mineral interest here involved
constituted an interest in land; the court held in effect that
if treated as personal property, in which event it would have
been listed and valued separately, no harm resulted to the tax-
payer for the amount of his taxes would not be diminished or
decreased thereby, for in any event he would pay on the same
assessed value. The matter of increasing the value of property
listed and assessed by the assessor, or the rendition voluntar-
ily made by the owner, is altogether a different matter. This
cannot be done in any event without notice to the owner and
consequent right to be heard; Hoffling v. City of San Antonio,
39 S.W. 918, by the Supreme Court of Texas. Summarizing, your
second question is answered as follows: Articles 7190, 7192 and
7193, R.C.S., are sufficient authority for the tax assessor to
assess personal property omitted by the property owner from his
rendition. We are of the opinion that the assessor would not
have the authority to refuse the rendition by the property owner
of such property as he, in the exercise of his statutory rights,
personally renders; but such property owner cannot circumvent,
by rendering only a part of his property, the statutory duties
imposed upon the tax assessor to list, value, and assess such
personal property as he may intentionally or otherwise omit from
his rendition. It would appear, however, from the language of
the court in the case of W.T. Waggoner Estate v. Electra Inde-
pendent School District, 157 S.W. (2d) 721. that the assessor
should assess property omitted by the owner from his rendition,
whether intentional or otherwise, on the unrendered rolls, rather
than by adding it to the voluntary rendition of the owner. In
this case the court said:

"In its petition the school district seems to
allege that the Estate did not render its mineral
interests, and that the board of equalization added
the mineral interests to the rendition. If it did do
this, it had no legal right to do so. The board of
equalization may, under proper procedure, change the
valuations, but it may not add, to the rendition, proper-
ties not included in the rendition. Such unrendered
properties could only be placed on the unrendered rolls
by the assessor. Crocker v. Santo Consol. Independent
School District, Tex. Civ. App., 116 S.W. 2d 750, and
cases therein cited." (Emphasis added)

We trust we have made sufficiently clear our answers to
your questions.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By: s/L.P. Lollar
      L. P. Lollar
      Assistant

LPL:AMM:wc

APPROVED MAR 17, 1944
s/Geo. P.  Blackburn
(Acting) ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee By s/A.W. Chairman