Diana Palacios GARCIA et al., Appellants,

v.

Rosario AVILA et al., Appellees.

No. 16346.

Court of Civil Appeals of Texas, San Antonio.

Jan. 30, 1980.

Rehearing Denied April 9, 1980.

Alonzo Villarreal, Jr., Uvalde, for appellants.

Luis M. Segura, San Antonio, Lupe Cortinas, Crystal City, for appellees.

OPINION

MURRAY, Justice.

This is an appeal from a judgment declaring the election of five officers in the 1978 general elections void and ordering new

elections. Appellants, Raza Unida Party candidates, were declared the winners of the November 7, 1978, general elections held in Zavala County, Texas. Appellees, Democratic Party candidates, filed election contests requesting that they be declared the duly elected public officers and in the alternative that the elections be declared void.[1]

Individual voters were challenged on the following grounds: convicted felons; illegal aliens; nonresident voters; unregistered or illegally registered voters; and noncompliance with absentee voting requirements. The appellees also alleged numerous irregularities and illegalities in the conduct of the general election including the conduct of absentee voting which was supervised by the then Chief Deputy County Clerk, appellant Diana Garcia.

On October 2, 1978, the district court of Zavala County ordered the impoundment of the ballot boxes and all other election records used in connection with the Zavala County general elections. During the period of absentee voting the election official in charge was ordered to deliver to the sheriff at the end of each voting day the ballot boxes, tally sheets, and all other election records. The impounded materials were to be kept in the Zavala County Bank. In their pleadings, appellees stated that the names of those absentee voters who did not comply with the statutory requirements for voting absentee could not be determined because the absentee ballots, applications for absentee ballots, and other voting materials were impounded by order of the district court. The appellants specially excepted to the appellees' pleadings complaining that the petition did not identify all of the people who allegedly voted illegally. With the approval of the court the appellees agreed to furnish a complete list of alleged illegal voters after examining the impounded election materials. On January 22, 1979, a hearing was held on appellees' motion to inspect the impounded election materials

except the voted ballots. The next day the trial court ordered an in camera inspection of the impounded materials except the voted ballots. Upon examining the impounded records in the presence of representatives for the parties, the trial court found the following items to be missing: 1) the signature rosters for absentee balloting; 2) signature rosters for election day voting in all election precincts except Precinct Six; 3) at least 420 applications for absentee voting in person; 4) all of the 203 applications for absentee voting by mail; and 5) poll lists showing at least 320 absentee voters in person. The court also found that because of the missing materials the appellees could not amend their petition to name all of the possible illegal voters.

On January 23, 1979, the same day that an inspection of the impounded election materials was ordered, the court began hearing testimony of individual voters who had been challenged. The appellees presented the testimony of forty-nine of the 291 individuals whose votes were challenged. Of the forty-nine voters who testified either live or by deposition, the court found forty ineligible to vote and declared their votes invalid. Additionally, Ms. Martha Cruz, tax assessor-collector for Zavala County, testified that forty-two voters whose names were on the poll lists did not have valid voter registration certificates. The court ruled that these voters were not registered and declared their votes invalid pending proof that they voted. At this point in the trial the appellees filed a motion to declare the election void.

During the hearing on the motion to declare the election void the appellees presented evidence that all of the signature rosters for absentee voting and all of the signature rosters for election day voting, except those for Precinct Six, were missing. Additionally, there was testimony that 623 absentee votes could not be accounted for by applications for absentee ballots. At the conclusion of the hearing the court determined

---

1. The trial court ordered the five election contests consolidated for purposes of hearing testimony and examining records.

that because of the missing records it was impossible to ascertain the true results of the election. On that basis, the election was declared void and a special election was ordered in the five contested races. From this judgment an appeal has been perfected.

Appellants challenge the judgment of the trial court through eleven points of error. By points one, two, and three, it is contended that the trial court erred in declaring the election void. The following reasons are given for this asserted error: 1) the irregularities in the conduct of the election were not shown to have affected the results of the election; and 2) not enough voters were successfully challenged to have changed the result of any election.

▆▆▆ In support of their contention appellants rely on the following rule: the statutes regulating the manner of holding an election are directory rather than mandatory; thus, a departure from their provisions will not invalidate an election unless the results are changed thereby. *See Harberson v. Lawhon*, 518 S.W.2d 840, 841 (Tex. Civ.App.—Fort Worth 1975, no writ); *Little v. Alto Independent School District*, 513 S.W.2d 886, 891 (Tex.Civ.App.—Tyler 1974, writ dism'd w. o. j.). We think that appellants' reliance on this well-settled principle is misplaced. In addition to the votes declared to be invalid, the trial court found numerous irregularities in the conduct of the election. Nevertheless, the trial court's judgment was not based on either the invalid votes or the irregularities in the conduct of the election. Rather, the election was declared void because of the missing election records. Article 9.15 of the Texas Election Code provides in pertinent part:

If it appears on the trial of any contest provided for in Section 134 [art. 9.06] that it is impossible to ascertain the true result of the election as to the office about which the contest is made, either from the returns of the election or from any evidence within reach or from the returns considered in connection with other evidence, . . ., the court shall adjudge such election void, and direct the proper officers to order another election . . .

A contestant seeking to have an election declared void under this provision must allege and prove that the true results of the election are impossible to ascertain. *See City of La Grulla v. Rodriguez*, 415 S.W.2d 701, 703 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.). Thus, in determining whether the trial court erred, the rule upon which the appellants rely, is simply inapplicable. The real question before us is whether the trial court abused its discretion in concluding that it was impossible to ascertain the true results of the election. *See Wilburn v. Galloway*, 179 S.W.2d 540, 542 (Tex.Civ.App.—Beaumont 1944, no writ). The trial court's order to impound the election material was violated. Consequently, hundreds of votes could not be accounted for by signature rosters, applications for absentee voting, or poll lists. We hold that the trial court did not abuse its discretion in concluding that the number of unknown voters made it impossible to determine the true results of the election.

By points of error numbers seven and eight appellants contend that the trial court erred in excluding lists which allegedly contained names of absentee voters who voted in person. During the hearing on the motion to declare the election void, appellants attempted to introduce into evidence copies of lists of voters voting absentee by personal appearance. Appellant Diana Garcia testified that during the period of absentee voting she prepared daily lists of absentee voters voting in person. Ms. Garcia related that each day at the end of the voting period she copied from the poll lists the names of people voting absentee by personal appearance. The poll lists were then returned to the sheriff to be impounded along with the other election records. Ms. Garcia further testified that the lists of names copied from the poll lists were typed and kept in the county clerk's office for purposes of public inspection. After this election contest was filed Ms. Garcia found these lists in an unlocked closet in the county clerk's office. The lists contained the date, precinct numbers, and names of 1,637

individuals. Appellants contend that the trial court erred in excluding these lists because they were admissible both as official records and business records. We disagree.

■ Article 3731a provides that a written record made by a government employee in the performance of his official duties shall be, if relevant, admissible as evidence of the matter stated therein. Tex.Rev.Civ.Stat. Ann. art. 3731a, § 1 (Vernon Supp.1980). The provision of the Texas Election Code governing absentee voting requires the county clerk to maintain a complete record of persons who have voted absentee by personal appearance. The statute further requires that the record contain the voter's name, address, precinct of residence, and voter registration number. Tex.Elec.Code Ann. art. 5.05(11)(a) (Vernon Supp.1980). Since the lists of absentee voters offered by appellants did not contain either the voter registration numbers or the addresses of the alleged voters they did not meet the requirements of Article 5.05. Therefore, the lists were not official records within the purview of Article 3731a.

■ Article 3737e provides in part that a record of an act or event is competent evidence of the occurrence of the act or event if it was made in the regular course of business, and it was the regular course of that business for an employee with personal knowledge of the act or event to make the record. Tex.Rev.Civ.Stat.Ann. art. 3737e, § 1 (Vernon Supp.1980). The impoundment order provided that all of the election materials were to be impounded on a daily basis during nonvoting hours throughout the period of absentee voting. At the end of the voting period each day the sheriff came to the clerk's office to pick up the election records. The materials were then taken by the sheriff to the Zavala County Bank to be impounded overnight. Each voting day at 8:00 a. m. the impounded materials were returned to the clerk's office. Article 5.05 of the Texas Election Code requires that the clerk's records of absentee voters and the applications for absentee ballots be open for public inspection during the clerk's reg-

ular office hours. See Tex.Elec.Code Ann. art. 5.05(11)(c) (Vernon Supp.1980). Since the impounded materials were at the clerk's office during its regular office hours, and hence available for public inspection during those hours, it was not necessary for Ms. Garcia to prepare additional lists from the poll lists in order to comply with Article 5.05. Thus, the copies which appellants attempted to introduce into evidence were not made in the regular course of business. We hold that the trial court did not abuse its discretion in excluding the lists offered by appellants. See Gasperson v. Christie, Mitchell & Mitchell Co., 418 S.W.2d 345, 358 (Tex.Civ.App.—Fort Worth 1967, writ ref'd n. r. e.).

By several points of error appellants contend that the trial court erred in allowing the inspection of the impounded election materials. In support of this contention appellants rely on several court decisions which seem to require an allegation and a showing of fraud or illegality before a trial court in an election contest can properly order the ballot boxes to be opened. See Day v. Crutchfield, 400 S.W.2d 377, 380–81 (Tex.Civ.App.—Texarkana 1965, writ dism'd w. o. j.); Sewell v. Chambers, 209 S.W.2d 363, 366–68 (Tex.Civ.App.—Fort Worth 1948, no writ); Markowsky v. Newman, 138 S.W.2d 896, 897 (Tex.Civ.App.—Galveston 1940, no writ); Texas Public Utilities Corp. v. Holland, 123 S.W.2d 1028, 1035–36 (Tex.Civ.App.—Fort Worth 1938, writ dism'd w. o. j.). A concern for the secrecy of the ballot best explains the reluctance of appellate courts to overturn a trial judge's decision refusing to open the ballot boxes. See Day v. Crutchfield, 400 S.W.2d 377, 380–81 (Tex.Civ.App.—Texarkana 1965, writ dism'd w. o. j.); Markowsky v. Newman, 138 S.W.2d 896, 897 (Tex.Civ.App. —Galveston 1940, no writ); Texas Public Utilities Corp. v. Holland, 123 S.W.2d 1028, 1035–36 (Tex.Civ.App.—Fort Worth 1938, writ dism'd w. o. j.). But see Sewell v. Chambers, 209 S.W.2d 363, 366–68 (Tex.Civ. App.—Fort Worth 1948, no writ). Appellants argue that there was no allegation of fraud; therefore, the trial court abused its

discretion in allowing the examination of the impounded election materials. We find this argument unpersuasive.

■ The trial court's order providing for the in camera inspection of the impounded election records specifically excepted the voted ballots. Thus, the secrecy of the ballot was in no way encroached upon by the inspection of the election materials.[2] *Cf. Meriwether v. Stanfield*, 196 S.W.2d 704, 706 (Tex.Civ.App.—Beaumont 1946, no writ) (trial court's tabulation and counting of ballots did not encroach upon secrecy of ballot). Moreover, all of the records which were to be examined would have been, but for the court's previous impoundment order, open for public inspection. *See* Tex.Elec. Code Ann. art. 5.05(11)(c) (Vernon Supp. 1980) (applications and records for absentee voting), art. 8.08(3) (Vernon Supp.1980) (signature rosters), art. 8.29 (Vernon 1967) (poll lists and tally lists), & art. 8.29b(a)(2) (Vernon Supp.1980) (poll lists and tally lists). The impounded records provided the only source of admissible evidence by which the unknown votes could be accounted for. We fail to see how the trial court's action in allowing the examination of these public records could possibly amount to an abuse of discretion. *Cf. Villarreal v. Hedrick*, 579 S.W.2d 41, 45–46 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd w. o. j.) (trial court vested with wide discretion in determining whether to open ballot boxes).

■ By point of error number eleven, appellant Diana Garcia contends that the trial court erred in overruling her plea to the jurisdiction because she was not served with notice in the manner required by the Texas Election Code.[3] Article 9.03 provides that a contestant must give the contestee written notice of the contest within thirty days after the return day of the election. *See* Tex.Elec.Code Ann. art. 9.03 (Vernon 1967). Article 9.05 states that this notice "shall be served by any person competent to testify, and shall be served by delivering the same to the party for whom [it is] intended in person, . . . ." *Id.* art. 9.05.

The appellees filed their notice and grounds of election contests with the Zavala County District Clerk and requested service upon Ms. Garcia by the Zavala County Sheriff's Office. At the hearing on appellant Garcia's plea to the jurisdiction there was testimony that Ms. Garcia was living, at least temporarily, with her mother, Enriqueta Palacios. The deputy sheriff attempted to deliver the papers to Ms. Garcia at her mother's home. Upon discovering that Ms. Garcia was not there he left the papers with her nine-year-old niece. The next morning, Enriqueta Palacios handed the papers to Diana Garcia. Subsequently, Ms. Garcia's attorney timely filed an answer in her behalf.

**2.** It is important to note that all of the cases relied on by the appellants were decided before the 1977 amendment to Article 8.15 of the Texas Election Code. Prior law required that a stub be affixed to each printed ballot. The ballot and its corresponding stub had the same ballot number. Upon preparing a ballot each voter was required to detach the perforated stub from the ballot, sign the back of the stub, deposit the ballot in the ballot box, and place the stub in a separate stub box. *See* 1951 Tex.Gen.Laws, ch. 492, § 8(97), at 1143. In an election contest in which the ballot boxes were ordered to be opened, it could easily be determined how a person voted by comparing the signed stub with the corresponding voted ballot. In order to maintain the secrecy of the ballot, limitations were placed on a trial court's authority to open ballot boxes. *See Markowsky v. Newman*, 138 S.W.2d 896, 897 (Tex.Civ. App.—Galveston 1940, no writ); *Texas Public Utilities Corp. v. Holland*, 123 S.W.2d 1028,

1036 (Tex.Civ.App.—Fort Worth 1938, writ dism'd w. o. j.); Tex.Elec.Code Ann. art. 13.-30(10) (Vernon 1967). The 1977 amendment to Article 8.15, however, eliminated the ballot stub and the stub box. *See* Tex.Elec.Code Ann. art. 8.15(2) (Vernon Supp.1980). Thus, in election contests arising after the effective date of this amendment an inspection of ballot boxes could not reveal how individual electors voted. It follows that the sacredness of the secret ballot is no longer threatened by an inspection of printed ballots. Consequently, a concern for the secrecy of the ballots is no longer a valid consideration in determining whether ballot boxes should be opened in a contest of a general election.

**3.** Appellant Garcia won the special election ordered by the trial court and is presently serving in her elected capacity.

When Enriqueta Palacios, a person competent to testify, handed the papers to appellant Garcia within thirty days of the return day, the literal requirements of Article 9.05 were satisfied. Appellant's point of error number eleven is, therefore, overruled.

The judgment of the trial court is affirmed.