**SEWELL et al. v. CHAMBERS et al.**

No. 14929.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 27, 1948.

Stine, Bunting & Stine, of Henrietta, and W. E. Fitzgerald, of Wichita Falls, for appellants.

John W. Moore, of Jacksboro, and Grindstaff, Zellers & Hutcheson, of Weatherford, for appellees.

SPEER, Justice.

This is an appeal from the judgment of the District Court of Jack County in an election contest held in the City of Jacksboro to determine if four different kinds of revenue bonds should be issued by the City.

Appellant, D. R. Sewell, for himself and the benefit of all other tax paying resident voters, contested the election as to all four propositions and named as contestees the appellees, R. D. Chambers, as Mayor, R. L. Henderson and V. R. Akins, as commissioners.

All references made by us in this opinion to statutes will be found in Vernon's Annotated Civil Statutes.

The pleadings of all parties are necessarily lengthy and we shall refer to them as briefly as we may, so as to show what was really in controversy.

Appellants (contestants) plead many irregularities in holding the election, such as, that contestees had not furnished to the officers holding the election, a list to be furnished by the County Tax Collector of persons who had paid their poll tax during the current year, as required by Article 2975; the presiding judge who was appointed by the Board to hold the election was an extreme partisan in favor of the bond issues and knew himself not to be a qualified voter; the officers holding the election from time to time during the progress of voting unfolded ballots, inspected them and announced in the presence of other members and persons then voting that such voter had voted against the propositions; the officers holding the election required certain voters to sign their respective ballots to thus enable them to declare such ballots mutilated while counting; that ballots cast against the propositions were changed after being deposited in the voting box and that the counting judges in canvassing the votes erroneously called many ballots and had them recorded for the propositions when they were in fact voted against them; those holding the election did not observe the provisions of Articles 3013 and 3015 in placing in box No. 4 all unused ballots along with those claimed to be mutilated, nor did they keep a list or register of any kind showing that any ballots had been mutilated but placed all unused ballots and those claimed to be mutilated into the box with the counted ballots and returned them in that form; that the presiding judge of the election did not take the oath of office nor did he require his helpers to take such oath, as provided by Article 2998.

The petitioner alleged notice and grounds of contest by him and the reply by contestees in the manner and within the time required by Article 3042; that the returns as declared and made were false, deceptive and fraudulent; that thirty-two named persons were permitted to vote who were not exempt from poll taxes and had paid none within the time provided by law to qualify them; that twenty-nine named persons were permitted to vote who had not rendered for taxation any property in said City for the current year, as provided by Article 2955a; that seventeen named persons were permitted to vote who either did not live inside said City or had not so resided for six months next prior to the time of the election; that four named persons voted absentee ballots, which said ballots were not made and returned in the manner required by law and were void; that illegal ballots were cast in the name of six persons who did not vote at all in said election. Allegations were made that all or practically all of the ballots so alleged to have been illegally cast were in favor of the

respective bond issues and were so counted by those holding the election in favor of said issues; that in canvassing, tabulating and returning said votes the election judges "threw out" approximately thirty-five ballots upon the theory that they were mutilated ballots, whereas they were intelligible and plainly revealed the intention of the voters and should have been counted; that contestant was unable to give the names of such persons whose votes were so disregarded. It was alleged that all illegal acts of those holding the election were occasioned either by mistake, accident or fraud; that if the election had been conducted and the returns made according to law the results would have been different and the bond issues defeated. Prayer was that the returns and declarations made thereon be set aside, that the ballot box be opened by the court, the votes counted and the result of the election declared by the court to be that the bonds election was defeated, and for general relief.

Contestees answered with general denial and specially that twenty-one named persons (eleven of whom were named in the same class by contestant) voted without exemption or poll tax receipts; that twenty named persons (ten of whom were those named in the same class by contestant) cast illegal votes in said election when they owned and had rendered no property for taxation in the City for the current year; that the four persons named by contestant as residing outside the City voted in said election, and that all of said illegal votes were cast against each of the bond issues. Contestees prayed that the illegal votes of those above pointed out be subtracted from those shown by the returns to have voted against said issues and the result declared by the court accordingly.

The issues thus made were tried to the court without a jury; the court heard the testimony offered by the respective parties concerning the illegal votes asserted by each and from the statement of facts before us seventeen of the votes challenged by one or the other of the parties were found to be legal, and by statements shown to have been made by the court forty-eight votes cast in the election were found to be illegal. Some of those found to be illegal the court did not indicate the grounds upon which he based his finding, but several were because the voter had no poll tax receipt, others were upon the stipulation of the parties, while others were based upon the ground that they were not shown to have owned and rendered any property in the City, while others lived outside of the City, and others were persons who were shown to have not voted at all or were unknown, and the four absentee votes were declared illegal.

Those votes declared by the court to be illegal were compared to the poll list from which the number of the ballot was ascertained, the ballot box opened, the forty-eight ballots removed and tabulated in the manner shown to have been voted, and the totals for and against the respective bond propositions subtracted from each of the official returns, and the result of the election declared by the court thereafter shows that propositions one to four inclusive were carried by the following majorities: No. 1, 17 votes; No. 2, 36 votes; No. 3, 21 votes; and No. 4, 40 votes.

After the ballot box had been opened and the forty-eight removed, counted and tabulated as above pointed out, the contestant offered to the court for consideration, all the remaining ballots cast at the election and asked that they be counted by the court and tabulated as the best evidence of the intention of the respective electors, this for the reason the court could not know how many ballots had been erroneously declared by the election judges to have been mutilated and because the various and sundry elements of mistake, accident or fraud had been conclusively shown and the court had by its ruling of illegal votes found all of same to exist. The court declined the proffered testimony and declared the evidence insufficient to warrant going into the mutilated ballot question. Upon this ruling of the court contestant predicates his principal point of error for reversal.

Substantially all of our statutory proceedings concerning elections and election contests are so worded as to apparently apply to primary and general elections for state, district, county and precinct officers, but in revenue bond elections and other

elections by municipalities Article 2997 provides that the mayor, city clerk or governing body of the municipality has the same duties and responsibilities as those of the county judge, county clerk or the commissioners' court in other elections. We call attention to this provision at this time to avoid explanatory statements found in other articles of the statutes to which we shall refer.

We are at first confronted by the contention of appellees (contestees) that we are without jurisdiction to hear this appeal, for the reason Article 3042 provides the requisites of a contest, such as this, to be that contestant must within thirty days after the return day of the election give notice in writing to the contestee of his intention to contest the election, stating the grounds therefor, and that by Article 3043 the contestee shall reply thereto within ten days after receiving such notice and statement, and that in the instant case no proof was offered by contestant that such notice and reply were given in the manner and within the time required by law. There is no contention that such notice and reply were not pleaded but it is insisted that no proof was offered on the point.

We think there is no merit in the motion to dismiss this appeal upon the ground stated. This record discloses that the election in controversy was held September 19, 1947, and that notice of contest and statement of the reasons therefor shows to have been received by the contestee on October 2, 1947, and within the ten days, to-wit: on October 10, 1947, the contestee replied thereto as provided by the above cited statute. Both the notice and the reply were filed with the District Clerk on October 17, 1947. Article 3045 provides that said notice of contest and reply shall be filed with the clerk of the court having jurisdiction thereof, and Article 3046 provides that when such notice, statement and reply have been filed with the clerk he shall docket the same as in other causes and the contest shall be tried by the court. The contestant and contestee may amend their respective statements and reply. In Messer v. Cross, 26 Tex.Civ.App. 34, 63 S. W. 169, 171, it was held that in fact the timely filing of notice of the contest and reply thereto with the clerk of the court is the bringing of the suit. The transcript before us, certified by the district clerk, contains the purported notice of contest and reply by contestee, the latter acknowledges receipt of the notice of contest and since the filing of these instruments constitutes the institution of the suit, there was no necessity for contestant to prove what contestee definitely admitted in the answer. The motion to dismiss for want of jurisdiction is overruled.

. Points of error Nos. 1 and 2 complain because the court refused to accept and count the ballots remaining in the box after the removal of the forty-eight found by him to be illegal, and in refusing to inspect the ballots and count those which were intelligible, declared by the election judges to have been mutilated ballots.

The testimony of the presiding judge of the election shows without dispute that while the counting was being done they came to some ballots which they considered mutilated, and did not count them; that although they were not counted they were placed in the box with the counted ballots; they did not make a list of those so discarded.

Just here we should state that with reference to the alleged mistakes, accidents, frauds and irregularities, there was uncontradicted testimony that: The presiding judge was a strong partisan in favor of the bond issues; he and his wife voted when neither was qualified; no person authorized to do so administered the oath of office to any one of the election officers, they signed a printed form of oath; they did not have a list of poll tax payers from the county tax collector; some voters were requested to sign their ballots; they discarded some ballots while counting because they were considered mutilated; all mutilated ballots and those unused were placed in the same box and returned with those voted; box No. 4 was returned with only some pencils and supplies in it; an official, while, receiving ballots unfolded one and announced in the presence of others that the voter had voted against the issues. We shall not further discuss these matters.

Appellees admit in their brief that the pleadings of appellant were sufficient to permit offering proof upon the several allegations of mistake, accident and fraud, charged in connection with the election, but argue that the matter of whether or not the ballots should be recounted by the court was one within his judicial discretion and in the absence of an abuse of that discretion the appellate court cannot revise his rulings thereon.

Prior to 1941, Article 3148 had been construed many times by the courts with reference to the authority given the trial court in election contests to open and recount the ballots. In 1941, Article 3148 was amended so as to read in part: "In addition to the powers and authority granted to the District Courts by Article 3130, * * * where fraud or illegality is charged, if such charges of fraud or illegality be supported by some evidence, * * * and the ends of justice seem to require it, the Court shall have authority to unseal and reopen the ballot boxes to determine controverted issues, and the Court may recount * * * the ballots cast in any or all precincts of the county to determine the true result of such election. * * *"

It is now the settled rule that where a case is tried to the court without a jury, the court becomes the trier of facts and where the testimony is conflicting it is his duty to resolve the conflict in such manner as will reflect having given the greater weight and credibility to the testimony and witnesses on the issue determined. It is also true that when the trial court has exercised this prerogative that the appellate courts will rarely disregard the court's findings in these respects. But we do not construe this rule to mean that where the court's fact findings are definite and he reaches a wrong conclusion of law such conclusion will not be revised by the appellate court. We do not construe the language of Article 3148 as being one left in its entirety to the judicial discretion of the trial court. It is one of the fundamental policies of our law that the ballot shall be secret, and this right shall be protected unless public policy demands otherwise. This court emphasized this rule of law in Texas Public Utilities Corp. v. Holland,

Tex.Civ.App., 123 S.W.2d 1028, writ dismissed, but in the cited case the precise question now before us was not presented by that appeal. We have a wholesome rule of law that the secret ballot be not treated lightly. However, there are public interests which outweigh the individual's right to have his ballot kept secret. "The stability of our government is dependent upon the honesty and purity of the ballot the secrecy of the ballot had better be scattered to the four winds, rather than have such secrecy shield corruption in elections, * * * better a thousand times that the individual's vote should be spread upon canvas under calcium light, than that fraud should be locked up within the lids of official ballot boxes and poll books with no known legal method of exposing such fraud." Gantt v. Brown et al., 238 Mo. 560, 142 S.W. 422, 425.

We have been cited to no case nor have we found one where the appellate court reversed the judgment of the trial court who refused to open the ballot box and make a recount; but at least twice since the passage of amended article 3148 in 1941 the courts have expressed themselves approving the acts of the trial court in opening the box and recounting the votes under allegations of fraud. In Wilburn v. Galloway, Tex.Civ.App., 179 S.W.2d 540, the contest was based upon allegations of "mistake, accident or fraud" upon the part of the election officers, the votes were not properly called and counted and the returns made therefrom were incorrect, occasioned by the mistake, accident or fraud of the officer whose duty it was to hold the election. The court opened the ballot box and found quite a number of illegal votes and the nature of their illegality is to be found in the opinion. It was argued in that case that the evidence of fraud disclosed by the ballots under the court's investigation were not sufficient to authorize the trial court to declare the election void. It was there held that there was sufficient evidence of fraud if believed by the court to authorize him to open the box and declare the result as he did.

In Meriwether v. Stanfield, Tex.Civ.App., 196 S.W.2d 704, 706, the trial court had upon the pleadings and proof opened the

ballot box and recounted the ballots; and each of the assignments of error was based upon this action of the court. The appellate court reviewed previously existing articles of the statute relative to the right of the trial court to open the ballot box and recount the votes and held that the legislature in 1941, in the passage of Article 3148, apparently attempted to cure some of the evils resulting from such a strict rule governing the trial of election contests that had previously existed. The court declared that Article 3148 liberalized and rendered less harsh the laws previously governing the trial of election contests. This language was used: "To protect the secrecy of the ballot is a high duty of the courts. Such a duty, however, is not in conflict with the equally high and important duty of the courts to protect candidates and voters from fraudulent miscounting of the ballots."

■■ We have already pointed out that in the instant case many allegations of mistake, accident or fraud were alleged and the resultant receipt by the election officers of many illegal ballots. It will also be observed that both contestant and contestees alleged many illegal votes, the names in some instances were duplicated. The trial court properly concluded that the allegations of mistake and fraud were sufficient to authorize the investigation of at least those votes alleged to have been illegally cast, and having opened the box and selected those upon which he had heard testimony, he recounted them and re-adjusted the final returns in conformity thereto. Among the votes declared by the court to be illegal were fourteen voters who had no property rendered for taxes in the county. The election judges had before them a list of property tax paying voters in the city and should have been guided thereby. The court found that the election judges had placed upon the poll list the names of four persons who did not vote at all and had received and counted their votes; that the election judges had received and counted the votes of eleven unknown persons. It must be assumed that by the court's rulings therein that little or no excuse, other than by mistake, accident, fraud or indifference to the law, could many of the ballots re-

jected by the court have been received and counted by the officers whose duty it was to hold a fair and legal election. The court, having thus concluded and opened the ballot box and hunted out the illegal ballots and tabulated them, could not, we believe, properly conclude that all remaining ballots, including those discarded by the election judges, were fairly received and properly counted. It is fundamentally true that the election returns are prima facie evidence of what they purport to be but it is equally true that this presumption may be overcome by the better proof evinced by the ballots themselves when the allegations and proof are sufficient to justify the resort to that better proof. Gray v. State, 19 Tex. Civ.App. 521, 49 S.W. 699, 701, involved an election contest and the court had opened and recounted the ballots and his acts were assigned as error; the asserted error was overruled, among other things the court said: "It having been alleged that the returns were false * * * it was unnecessary to allege that the officers of the election had acted fraudulently in making them; for the injury to the relator would have been the same, and the ballots, if they came from the proper custody, were admissible as primary evidence of the result to controvert the returns." We are not to be understood as holding that allegations alone of fraud will justify resort to the ballot box, such would set a dangerous precedent; but we hold that such allegations of fraud must be supported by "some evidence" of probative value, and be made to appear that "the ends of justice seem to require it" as provided by Article 3148, before the ballot box should be opened and a recount had.

■ From a careful reading of this whole record, we have concluded that there is an abundance of evidence that at least a legal fraud has been committed as against appellants (contestants) and authorizes if not requires a recount of the votes remaining in the box after the removal of those shown to have been removed and counted by the court. It seems to us that the ends of justice require that such recount be had under the supervision of the court. Points one and two are sustained.

■ Point three asserts error in the court's refusal to declare the election void. We overrule this point. By Article 3054 it is provided that in such contests as this, if it is impossible to ascertain the true result of an election, either from the returns or from evidence within reach of the court, or from the returns and such other evidence, or that a sufficient number of qualified voters were denied the right to vote to change the result declared by the returns, the court shall declare the election void. We think this election and its contest do not fall within the class applicable to the cited statute. A recount of the ballots remaining in the box, discarding those shown to have been "mutilated", would of necessity arrive at the expressed intention of the electorate.

The fourth point is not briefed and requires no discussion by us.

■ The fifth point asserts error because the court held the vote of Robert Maxwell to be legal. The testimony shows that this voter lived in Young County in 1946 and sold his property there in January of 1947, paid his taxes for 1946 and at that time paid his poll tax and received his receipt for it for 1947, and when he delivered the title papers to the purchaser he inadvertently let his poll tax receipt go with all of his other papers. This testimony was not contradicted and we believe the best evidence rule was not violated, and the point is overruled.

■ Point six complains because the court held the vote of Rosa Risley illegal. The testimony, without dispute, shows that she deeded her property to her son in 1945 without any reservations or claims or equities whatever, although she testified the parol understanding between her and her son was that she should have the privilege of occupying the property in the future. The son rendered and paid taxes at all times thereafter. The court held that Mrs. Risley did not own, render nor pay property tax in the City and for that reason her vote was illegal. We think the ruling correct. Texas Constitution, Art. 6, sec. 3a, Vernon's Ann.St.; Art. 2955a.

It is quite obvious from this record that upon another trial many of the matters upon which uncontroverted testimony was heard at the previous trial may and perhaps will be stipulated by the parties; but this cannot be controlled by us at this time.

For the reasons hereinabove given and under the authorities cited, we believe and so hold that the ends of justice require that this judgment be reversed for another trial not inconsistent with this holding.

The judgment of the trial court is reversed and the cause remanded.