Raul R. VILLARREAL, Contestee,

v.

Jo Ann HEDRICK, Contestant.

No. 1429.

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 22, 1979.

Rehearing Denied March 15, 1979.

Raul Garcia, Armando Cavada, Alice, for appellant.

Perkins, Oden, Warburton, McNeill & Adami, Alice, for appellee.

## OPINION

BISSETT, Justice.

This is an election contest, wherein Jo Ann Hedrick was contestant in the trial court and Raul R. Villarreal was contestee. Trial was to the court. Judgment, which was favorable to Jo Ann Hedrick, was rendered on June 28, 1978. Raul R. Villarreal has appealed.

The election in question was held on April 1, 1978, for the purpose of electing a Mayor and four Commissioners for the City of Kingsville, Texas. The results of that election were canvassed on April 3, 1978. Dr. R. M. "Dick" Botard was elected Mayor, and Nerio C. Garza (3,518 votes), Mary C. Hill (3,079 votes), Cassie Flagiello (2,594 votes) and Jo Ann Hedrick (2,425 votes) were declared to be the duly elected Commissioners of the City.

Thereafter, Raul R. Villarreal, who received 2,422 votes, timely requested a recount. A recount committee was duly appointed. Upon a tabulation of the votes by the recount committee, it was declared that Raul R. Villarreal received 2,429 votes and that Jo Ann Hedrick received 2,423 votes. Based on the tabulation by the recount committee, Raul R. Villarreal was declared to have been elected as a City Commissioner at the election held on April 1, 1978.

Jo Ann Hedrick then timely filed her election contest petition in the District Court of Kleberg County, Texas. As already stated, judgment was rendered in her favor by the trial court. Raul R. Villarreal will henceforth be referred to as "appellant" and Jo Ann Hedrick will be referred to as "appellee."

Appellant challenges the judgment by asserting four points of error. In points 1, 2 and 4, he complains of the action by the trial judge in ordering the ballot boxes opened and in conducting a recount of all ballots cast at the election on the sole ground that appellee's petition is insufficient to permit such action by the trial judge since she alleged only "fraud or illegality" in the conduct of the election. Specifically, he says in his brief: "mere allega-

tions of fraud will not justify re-entry into a ballot box and a complete re-count," and that "it was error to proceed to open all of the ballot boxes and said error resulted in the rendition of an improper judgment." Although there are no specific points to the effect that there was "no evidence" or the evidence was "factually insufficient" to warrant the opening of the ballot boxes, he does take such position in his argument under the points. Appellant says in Point 3 that the court abused its discretion in the method or manner it ordered a recount."

In summary, appellee (contestant) alleged: 1) the recount committee was not composed of three disinterested parties, but was composed of a person or persons who had a keen interest, bias and prejudice against her in the outcome of such election recount; 2) that such bias or prejudice actually contributed to a tabulation of the votes in such a manner that changed the results of the election in favor of contestee; 3) throughout the vote recount procedures, there were numerous irregularities, inconsistencies and mistakes which materially altered the results of such recount in favor of the contestee; 4) numerous ballots were questioned by the Chairman of the recount committee and those ballots were not counted, nor were they seen or passed on as a proper or improper vote by other members of the committee; 5) in addition to the improper and erroneous tabulation and count of the ballots, the recount committee, in some instances, failed to count and tabulate several ballots where the true intent of the voter could be determined from the face of such ballot, or ballots, and, in other instances, counted several ballots for contestee where the true intent of the voter could not be determined from the face of the ballot; 6) the above mentioned mistakes, irregularities or inconsistencies permeated the entire election recount; and 7) had the recount committee conducted the recount properly and in accordance with law, she would have prevailed over contestee in the recount. In the alternative, appellee alleged that such irregularities, mistakes or inconsistencies made by the recount committee in the tabulation of the ballots ren-

dered it impossible to determine the will of a majority of the voters who voted in the election in question without a court ordered recount of the votes cast at the election.

The trial court made findings, which are set out in the judgment, as follows:

". . . the Court, having considered the evidence and argument of counsel, is of the opinion and did find sufficient evidence of inconsistencies in the counting of specified ballots and the not counting of other specified ballots by the Election Recount Committee in said election, so that it was impossible to determine the true will of the majority of the voters participating in said election without opening the ballot boxes of said election and recounting all of such ballots cast therein."

\* \* \* \* \* \*

"Whereupon, in accordance with the appropriate Court order, a recount of ballots cast in said election having been conducted . . . and the Court further finding that the parties hereto have contested 70 ballots cast in said election; the Court finds that 33 of said ballots contained valid votes for the Contestant and that 28 of said ballots contained valid votes for the Contestee, and the Court further finds that Contestant received a total of 2,432 legal and valid votes in said election and that Contestee received a total of 2,427 legal and valid votes in said election, and that as between the two parties, the Contestant, Joanne Hedrick, has received a majority of the votes cast in said election."

The findings are not attacked in this appeal.

The recount committee consisted of Mr. Rosendo Munoz, Mr. Bob Odom and Ms. Rosanna Ochoa. Mr. Munoz was chairman of the committee. All committee members were appointed by Mr. Gilbert Acuna, the then Mayor of Kingsville.

Paper ballots were used at the election. The ballots had printed thereon the names of nine candidates for the offices of City Commissioner. At the election, 6,223 valid and legal votes were cast. Each of the nine candidates for the four officers received more than 2,000 votes. Several other write-in candidates for City Commissioner received 1 or 2 votes each.

Appellee testified that politics played a role in who was chosen for the recount committee, in that she was in political opposition to Mayor Acuna, and that he selected the recount committee, which was not composed of three "disinterested persons." She further testified that her objections concerning the inconsistencies in the tabulation by the recount committee were generally disregarded except for openly obvious mistakes; that the recount committee denied her the opportunity to see questioned ballots any more closely than a mere glance; that on at least two occasions the chairman of the recount committee deliberately miscalled the correct vote tabulation and omitted calling two votes for her, and when the chairman was corrected by her, he stated that he had miscalled the votes on purpose to see if she was alert.

As to the actual method in which the ballots were tabulated, there was evidence that there were numerous occasions when the "tally" (vote count) of each of the two members of recount committee was not the same. It was shown that there was no uniform method utilized to see whose vote count was correct.

Appellee and corroborating witnesses testified that the recount committee had numerous tally discrepancies wherein the ultimate decision on the exact tally or vote count was not resolved by a recount of the ballots or any other precise method, but rather, the tally discrepancy was resolved by one of the vote tabulators changing his (her) vote count to match the count of the other vote tabulator. There was evidence that on at least four occasions appellant's vote count was affected, and it was always resolved in his favor, so as to give him the higher number of votes.

None of the members of the recount committee could recall the manner in which any of the ballots were specifically marked; the members admitted that there were tally

discrepancies and that mistakes could easily have been made in the vote count. In addition, Mr. Bob Odom, one of the recount committee members and a vote tabulator, testified that different and varying interpretations were given to ballots where voters used scratch marks. He said that on some occasions, the scratch mark was counted as a good vote; and, on other occasions the scratch mark was counted as a strike of a candidate not wanted for office.

One witness, in effect, testified that Munoz, in handling the ballots, made it difficult for observers to examine or look at any questioned ballot because "he flashed them and turned them face down and if you didn't get a quick look, you couldn't see anything." When asked:

"Q  You think he was trying to prevent her (appellee) from seeing things as opposed to trying to get through with the recount?";

the witness answered:

"A little of both of it."

To describe the type of irregularities and inconsistencies that were made by the re-

count committee, appellee testified concerning specific ballots,[1] how these ballots were marked, and how the recount committee tabulated such ballots. Such testimony was neither disputed nor rebutted.

Appellee further testified about six specific ballots which were not counted for her and that they should have been good ballots and votes for her, because similar ballots were counted for appellant. She also recalled three specific ballots that were counted for appellant that should not have been counted for him, because similar ballots for her were not counted.

Some of the ballots were questioned only by Munoz, the chairman of the election recount committee. It was established that from the first day of the recount until 10:45 a. m. of the second day, only Munoz questioned the ballots and the other two members did not see such ballots. The ballots questioned by Munoz went into the ballot box, so that it became impossible to distinguish such ballots from other ballots which were already on the tally sheet. Appellee complained, but her complaints were disre-

1. Ballot # 2321 was a ballot that contained five candidates's names scratched out and left four unscratched names remaining. Appellee was one of the names unscratched. Although the voter used the "scratch" method of voting, this ballot was disqualified and not counted.

On ballot # 6752, the voter used the scratch method and had four names scratched out, leaving five names blank; appellant was one of the names scratched out; the ballot was counted as a good vote for appellant.

On ballot # 8858, the voter used the scratch method and had two names scratched out. Appellant's name was one scratched out; the ballot was counted for appellant.

On ballot # 137, the ballot showed four clear and distinct "X's," one of which was for appellee. On a fifth candidate's name, the "X" had been scribbled out. The ballot was disqualified and not counted.

On ballot # 180, there were four clear and distinct "X's," one of which was for appellant. On a fifth candidate, there was an "X" with the word "No" over the "X." The vote was counted for appellant. However, in ballot # 7264, which was marked similarly to ballot # 180, except that one of the four clear and distinct "X's" was for appellee, the ballot was not counted.

On ballot # 4121, the names of appellant and another candidate were marked and both ap-

peared to have been erased. The ballot was counted as a vote for appellant, but was not counted as a vote for the other candidate.

On ballot # 4130, there were four clear and distinct "X's," one of which was for appellee. A fifth name had a scratch through the name. The committee ruled this to be five votes and disqualified the ballot. Ballot # 81 was marked the same as ballot # 4130, except appellant was one of the four clear "X's." There was a scratch through a fifth name. The ballot was counted as a good ballot and a vote for appellant.

Ballot # 4045 was marked with four clear and distinct "X's," one of which was for appellee, and there was a smudge or questionable mark by a fifth name. The ballot was disqualified on the basis of five votes and not counted. Ballot # 5570 was marked similarly to ballot # 4045, and the recount committee counted it as a good ballot.

Ballot # 8003 was marked with four clear and distinct "X's," one of which was for appellee, and appellant's name was marked with an "X" with a scratch through the name of the appellant and an arrow drawn from appellant's name to the next clear and distinct "X." The committee disqualified the ballot as five votes, and did not count it for anyone.

garded until, according to her testimony, Odom said to Munoz:

"[f]rom now on, if you are going to decide on a ballot, all three of us should have a say whether it qualifies or not."

Thereafter, all members of the recount committee looked at all questioned ballots.

After both parties closed, the trial court, over appellant's objection that the proper predicate has not been laid to authorize the opening of the ballot boxes for the purpose of a court recount, ordered:

"[a]n election recount be conducted of all the ballots cast in the City of Kingsville election of April, 1978 . . . ."

The attorneys for the parties were appointed the "official and court authorized representatives" of the trial court to conduct the recount. Procedures in conducting the recount, which are not attacked in this appeal, were set out by the trial court in the order.

The attorneys, in the presence of the trial judge and in open court, opened the ballot boxes and counted all of the votes cast at the election. At the conclusion of the count, it was stipulated that appellant and appellee each received 2,399 valid votes at the election on April 1, 1978. There was a dispute between the attorneys as to 70 ballots. Interpretations of the disputed ballots were argued to the court by the attorneys, and the trial judge, after inspecting each such ballot, made a ruling concerning the same. As a result of such rulings, appellant was awarded 28 votes out of the 70 ballots in dispute and appellee was awarded 33 votes out of such ballots. Accordingly, the trial court then rendered judgment which set aside the results of the recount of the ballots by the recount committee with respect to the votes received by both appellant and appellee at the election, and further decreed that appellee:

". . . is the legally and duly elected City Commissioner for the City of Kingsville, Kleberg County, Texas, and that she be, and she is, hereby authorized and ordered to assume the office of City Commissioner that has been heretofore occupied by the Contestee, Raul R. Villarreal, and that upon her qualification for said office in accordance with the Laws of Texas and the City Charter of Kingsville, that she assume the position of the office of City Commissioner above mentioned."

■ We do not agree with appellant that appellee alleged only "fraud and illegality" in the conduct of the election. Appellee's pleading of "irregularities, mistakes or inconsistencies" in the tabulation of the ballots by the recount committee which altered the original and true result of the election, as well as the alternative plea that such "irregularities, mistakes or inconsistencies" rendered it impossible to determine the will of the majority who voted at the election, are sufficient to lay a predicate for the introduction of evidence at the trial relating to such alleged "irregularities, mistakes or inconsistencies." The evidence, hereinbefore summarized, as well as additional evidence of probative value, was properly admitted. There was ample evidence to support the action by the trial court in ordering a "court recount" of the ballots cast at the election in question.

■ Upon the filing of an election contest in the district court, the scope of inquiry by the court encompasses the entire election process and extends to all matters affecting the final results of the election. *Turner v. Lewie*, 201 S.W.2d 86 (Tex.Civ. App.—Fort Worth 1947, writ dism'd); *Roberts v. Hall*, 167 S.W.2d 621 (Tex.Civ.App.— Amarillo 1943, no writ); *Border v. Abell*, 111 S.W.2d 1186 (Tex.Civ.App.—Galveston 1937, no writ). By necessity, the scope of such inquiry includes a review of the activities, conduct, and tally of the votes of a recount committee, since the tally by the recount committee, when challenged by an interested party by the filing of an election contest in a court of competent jurisdiction (the district court), is a part of the election process which affects the final results of the election.

■ With respect to the opening of the ballot boxes and recounting the ballots cast at an election, the trial court, in an election contest, is vested with wide discretion in determining all matters necessary or proper

to determine the outcome of the contest, including whether the ends of justice require that the ballot boxes be opened and the ballots be recounted. On appeal from such determination, the decision will not be disturbed on any question decided unless a clear abuse of discretion as to a material issue is shown. *De La Garza v. Salinas*, 255 S.W.2d 396 (Tex.Civ.App.—San Antonio 1953, no writ); *Sewell v. Chambers*, 209 S.W.2d 363 (Tex.Civ.App.—Fort Worth 1948, no writ); *Meriwether v. Stanfield*, 196 S.W.2d 704 (Tex.Civ.App.—Beaumont 1946, no writ).

With the abundant and undisputed evidence of irregularities, inconsistencies and mistakes made by the recount committee concerning *specific* ballots (set out in the preceding footnote), as well as other evidence in the record, the trial court was clearly warranted in ordering that the ballot boxes be opened so that the court could examine the best evidence (the ballots themselves) in resolving the issue. The opening of the ballot boxes and the recount of the ballots did not constitute an abuse of discretion in this case, since the evidence offered by appellee clearly demonstrated that the irregularities, inconsistencies and mistakes of the recount committee were of such nature that it was impossible for the trial court to determine the true will of a majority of the voters who voted in the election of April 1, 1978, without a "court recount" of the ballots. The trial court properly rendered judgment for appellee.

We have reviewed the entire record and have considered all points of error which have been brought forward by appellant. The points are overruled.

We note that execution of the judgment rendered by the trial court was suspended on June 28, 1978, as a result of the filing of a supersedeas bond by appellant. As a consequence, appellee has not had the benefit of the office to which she was elected on April 1, 1978, nor has she been permitted to act as a duly elected Commissioner of the City of Kingsville. We, therefore, terminate the prohibition placed on appellee as a result of the filing of the supersedeas bond,

and further order that Jo Ann Hedrick, appellee, upon her qualification under the Laws of Texas and the City Charter of Kingsville for the office to which she has been duly and legally elected, forthwith actively assume the office of City Commissioner of Kingsville.

Since the validity of a statute is not questioned by the decision of this Court, a motion for rehearing will not be entertained. Tex.Rev.Civ.Stat.Ann. art. 1821(4) (1964).

AFFIRMED.

## OPINION ON MOTION FOR REHEARING

The portion of the Court's opinion in this case which stated: "A motion for rehearing will not be entertained" is deleted.

Appellant's motion for rehearing, having been timely filed and considered by this Court, is overruled.