Juan Angel GUERRA, Appellant,

v.

Gustavo Ch. GARZA, Appellee.

No. 13-93-051-CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 4, 1993.

Rehearing Overruled Dec. 9, 1993.

Juan A. Guerra, pro se.

Eduardo R. Rodriguez, Laura J. Urbis, Rodriguez, Colvin & Chaney, Brownsville, Chris A. Brisack, Neil E. Norquest, McAllen, for appellee.

Before FEDERICO G. HINOJOSA, Jr., DORSEY and GILBERTO HINOJOSA, JJ.

## OPINION

FEDERICO G. HINOJOSA, Jr., Justice.

This is an appeal of an election contest for the office of County Attorney of Willacy County. Juan Angel Guerra, the Democratic Party nominee, sued appellee, a write-in candidate, contesting the canvass results of the November 3, 1992, general election which

1. All statutory citations refer to the Texas Election Code as enacted by the Act of May 24, 1985,

declared appellee the winner. Guerra alleged that appellee and his workers conspired to obtain votes and defraud the voters of Willacy County of their true choice for County Attorney by committing numerous violations of the Texas Election Code. Guerra requested that the trial court 1) order the ballot boxes opened, 2) order an inspection and recount of the ballots, and 3) upon recount, declare him the winner. Alternatively, he alleged that due to the illegalities, the true outcome was not determinable, and the trial court should order a new election. After a bench trial, the trial court denied Guerra's contest and declared appellee the winner. Guerra appeals by seventeen points of error. We reverse and remand.

Guerra and appellee do not dispute the results of the final canvass which showed that appellee received 2,739 votes and that Guerra received 2,451 votes. Thus, 288 votes separated the two candidates. The voters cast their votes on paper ballots. By his election contest, Guerra challenged the canvass results under §§ 221.002, 221.003, and 221.008 of the Texas Election Code[1] as not reflecting the election's true outcome.

In support of its ruling, the trial court issued its "FINDINGS OF FACT AND CONCLUSIONS OF LAW" which state in relevant part as follows:

### FINDINGS OF FACT

1. The final canvass of election results from the 1992 general election of District and County Attorney for Willacy County, Texas demonstrates that Garza received 2,739 votes and Guerra received 2,451 votes.

2. The final canvass of votes, therefore, demonstrates that Garza won the election by 288 votes.

3. The evidence failed to establish the existence of a fraudulent and/or illegal plan, conspiracy, or scheme to defraud the voters of Willacy County, Texas as set forth in ... Contestant's Original Petition.

69th Leg., R.S., ch. 211, 1985 Tex.Gen.Laws 802, unless otherwise specified.

4. The evidence failed to establish that the election result as certified did not reflect the true outcome of the election. Specifically, the evidence failed to establish:

   a) that if any illegal votes were cast, the number of such votes were sufficient to have influenced the outcome of the election;

   b) that if any eligible voters were prevented from voting, the number of such voters were sufficient to have influenced the outcome of the election;

   c) that if any legal votes were not counted, the number of such votes were sufficient to have influenced the outcome of the election;

   d) that if any fraudulent or illegal conduct was engaged in by any election officer(s) or administrator(s), that any such conduct would have influenced the outcome of the election.

5. Any and all irregularities in the election process, as alleged in ... Contestent's [sic] Original Petition, even if established, were of any [sic] insufficient number to have altered, modified or changed the true outcome of the election, and do not require or authorize the Court to declare the outcome of the election to be other than that which has been duly certified.

6. Any Finding of Fact herein stated may be incorporated herein as a Conclusion of Law.

### CONCLUSIONS OF LAW

1. That the duly certified election results of the 1992 general election for District and County Attorney of Willacy County, Texas declaring Gustavo Ch. Garza the winner reflect the true outcome of the election.

2. That any relief sought by Juan Angel Guerra, the Contestant, is denied.

4. Any Conclusion of Law herein stated may be incorporated herein as a Finding of Fact.

Appellee argues that Guerra did not challenge any specific findings and conclusions, nor did he challenge the sufficiency of the evidence to support the findings. He further argues that the findings of fact and conclusions of law are binding on this Court and require an affirmance of the trial court's judgment.

■ Findings of fact which are not challenged by proper assignment of error on appeal are binding on the parties and the reviewing court. *Alkas v. United Sav. Ass'n,* 672 S.W.2d 852, 856 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.); *Ott v. Bell,* 606 S.W.2d 955, 957 (Tex.Civ.App.—Waco 1980, no writ); *Katz v. Rodriguez,* 563 S.W.2d 627, 630 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). In this case, Guerra has challenged findings four and five and conclusions one and two, by challenging the evidence to support these findings and conclusions. Guerra contends that the evidence showed that the votes needed to uphold the election should not have been counted and that irregularities occurred during the election process.

■ Findings of fact entered in a case tried to the bench are of the same force and dignity as a jury's verdict upon special questions. *City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them [2] by the same standards as are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a special question. *Okon v. Levy,* 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.).

Section 221.003 governs the scope of the inquiry in an election contest and provides in relevant part as follows:

(a) The tribunal hearing an election contest shall attempt to ascertain whether the outcome of the election contest, as shown by the final canvass, is not the true outcome because:

---

**2.** *First Nat'l Bank v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.).

(1) illegal votes were counted; or

(2) an election officer or other person officially involved in the administration of the election:

    (A) prevented eligible voters from voting;

    (B) *failed to count legal votes;* or

    (C) engaged in other fraud or illegal conduct or made a mistake.

  (b) In this title, "illegal vote" means a vote that is not legally countable.

TEX.ELEC.CODE ANN. § 221.003 (Vernon 1986).

■■ An election contestant has the burden of proving that voting irregularities were present and that they materially affected the election's results. *Goodman v. Wise,* 620 S.W.2d 857, 859 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Wright v. Bd. of Trustees of Tatum Indep. School Dist.,* 520 S.W.2d 787, 790 (Tex.Civ.App.—Tyler 1975, writ dism'd); *Setliff v. Gorrell,* 466 S.W.2d 74, 78 (Tex.Civ.App.—Amarillo 1971, no writ). Election contestants must allege and prove particularized material irregularities in the conduct of the election and show either 1) that a different and correct result should have been reached by counting or not counting certain specified votes affected by the irregularities, or 2) that the irregularities rendered impossible a determination of the majority of the voters' true will. *Goodman,* 620 S.W.2d at 859; *Wright,* 520 S.W.2d at 793; *Ware v. Crystal City Indep. School Dist.,* 489 S.W.2d 190, 191–92 (Tex.Civ. App.—San Antonio 1972, writ dism'd). The standard of review for an appeal from a judgment in an election contest is whether the record shows that the trial court abused its discretion. *Green v. Reyes,* 836 S.W.2d 203, 208 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Goodman,* 620 S.W.2d at 859.

By his first through seventh points of error, Guerra complains that the trial court erred in counting ballots for appellee when voters did not write appellee's name on the ballot. By his eighth point of error, he complains that the trial court erred in counting ballots for appellee when the voters did not write appellee's name on the correct place on the ballot.

■■ The facts show that a number of persons served as Willacy County election workers during the 1992 general election. As the events surrounding the election are reported through numerous witnesses, we have attempted, when possible, to generally summarize each witness's testimony.

The testimony showed that some voters marked their ballots for County Attorney by writing in "Gus," "Gues," "G.G.," "Garza," "Gue," "Gus Garza," or "Gus Garcia." Some ballots even had Mickey Mouse written on them. Some of these names were written on the line for a write-in candidate for the office of County Attorney and some were written elsewhere on the ballot. A number of these votes were counted for appellee.

Doris Graham, the precinct one election judge, testified that three persons with the surname "Garza" ran in the election, Robert Garza,[3] LaQuita Garza,[4] and appellee. Only one person named Garza, "Gustavo 'Gus' Garza," ran for County Attorney as a write-in candidate. Gustavo Garza is called "Gus" and to her knowledge, no one else named "Gus" ran in the election.

Gloria Cavazos, a precinct two poll watcher, testified that three ballots had an "X" written in the square located in the write-in column for the County Attorney's race. The voters, however, did not write-in appellee's name on these three ballots. Cavazos testified that Sarah West, the caller, wrote appellee's name on one ballot and initialed it and that Ms. Wepfer, a tally clerk, did the same thing on the second ballot. Cavazos saw Alicia Dominguez, a tally clerk, write something on the third ballot, but she did not see what else was written on the ballot.

Morris Dodd, who served as the precinct nine election judge, testified that he knew appellee as "Gus" and "Garza."

---

**3.** Robert Garza was the Democratic Party nominee for Judge of the 138th Judicial District Court of Willacy County. His name was pre-printed on the ballot.

**4.** LaQuita Garza was the Democratic Party nominee for Tax Assessor–Collector of Willacy County. Her name was pre-printed on the ballot.

Section 146.001 of the Texas Election Code states that "[e]xcept as otherwise provided by law, if the name of the person for whom a voter desires to vote does not appear on the ballot, the voter may write in the name of that person." TEX.ELEC.CODE ANN. § 146.-001 (Vernon 1986). Section 64.005 states that "[i]n an election in which write-in voting is permitted, a vote for a candidate who is not on the ballot must be indicated by writing the *candidate's name in the appropriate place provided on the ballot.*" TEX.ELEC. CODE ANN. § 64.005 (Vernon 1986) (emphasis added). Section 65.009 states in relevant part that: "(a) Failure to mark a ballot in strict conformity with this code does not invalidate the ballot" and that "(c) A vote on an office or measure shall be counted if the *voter's intent is clearly ascertainable unless other law prohibits counting the vote.*" TEX. ELEC.CODE ANN. § 65.009(a), (c) (Vernon 1986) (emphasis added).

Two cases which are instructive in determining voter intent are *Fuentes v. Howard*[5] and *Wright v. Marquis.*[6] In *Fuentes,* a voter wrote "Nell Howard" for the write-in candidate, Frances E. Howard. Fuentes contested this vote on the basis that the voter's intention to cast a vote for Howard was not clearly ascertainable within the meaning of article 6.06 of the Texas Election Code.[7] Article 6.06 provided, in relevant part, that "[t]he failure of a voter to mark his ballot in strict conformity with these directions or failure to vote a full ballot shall not invalidate the ballot, and a ballot shall be counted on all races ... wherein the intention of the voter is clearly ascertainable...." The court noted that Howard was known in the community as Nell Howard, Nellie Howard, and Frances E. Howard. It held that the trial court properly counted this ballot for Howard.

In *Wright,* a voter erased Wright's printed name on the ballot and wrote underneath it

the name "A.R. Maruuis" as the name of the write-in candidate, A.R. Marquis. The court noted that only two candidates, Wright and Marquis, ran for the office, and it stated:

> The law does not require that it should be accurately or nicely written, or that the name of the candidate voted for should be correctly spelled. If the will and desire of the voter can be ascertained from the ballot, and no law is infracted, the ballot should be given effect.

*Wright,* 255 S.W. at 639. The court found that the voter intended to vote for Marquis and held that the ballot was properly counted for him.

In the present case, the evidence shows that three persons with the surname "Garza" ran in the election. Two of them, Robert Garza and LaQuita Garza, had their names pre-printed on the ballot. Doris Graham testified that appellee was the only person with the surname "Garza" that ran as a write-in candidate and that he was called "Gus." To her knowledge, no one else named "Gus" ran in the election. Morris Dodd knew appellee as "Gus" and "Garza."

We hold that ballots which have "Gus," "Garza," or "Gus Garza" either completely written or partly written on the County Attorney's line were properly counted for appellee because the voter's intent to vote for him is clearly ascertainable. *See* TEX.ELEC. CODE ANN. §§ 64.005 & 65.009(a), (c) (Vernon 1986); *see also Fuentes,* 423 S.W.2d at 426; *Wright,* 255 S.W. at 639. We also hold that ballots which have the surname "Garza" written anywhere else on the ballot (other than the County Attorney's line) were not properly counted for appellee because the voter's intent to vote for him is not clearly ascertainable.[8] We further hold that the ballots which have "Gues," "Gue," the initials "G.G.," "Gus Garcia," or "Mickey Mouse," even if written on the County Attorney's line, were not properly counted for appellee because the voter's

**5.** 423 S.W.2d 420 (Tex.Civ.App.—El Paso 1967, writ dism'd).

**6.** 255 S.W. 637 (Tex.Civ.App.—San Antonio 1923, no writ).

**7.** *See* Act of June 12, 1967, 60th Leg., R.S., ch. 452, 1967 Tex.Gen.Laws, 1029, *amended by,* Act

of May 24, 1985, 69th Leg., R.S., ch. 211, 1985 Tex.Gen.Laws, 884.

**8.** Such a voter could have intended to vote for any person with the surname "Garza" or could have intended to vote for appellee for another office.

intent to vote for him is not clearly ascertainable.[9] Further, the two ballots on which West and Wepfer wrote appellee's name were not properly counted for appellee because the voter's intent to vote for him is not clearly ascertainable.

■ By his ninth point of error, Guerra complains that the trial court erred in counting ballots for appellee that had pencil marks written over in blue ink, indicating either a straight-Democrat or straight-Republican vote. Oralia Reyes, the courthouse poll watcher, testified that she saw approximately 150 ballots from precinct seven that had overlapping pencil and pen marks in the boxes indicating either a straight-Democrat vote or a straight-Republican vote. These ballots also had appellee's name written in pencil in the write-in candidate's space, and they had an "X" written in pencil in the box for the write-in candidate. She stated that most of these ballots were counted for appellee.

Section 65.007(c) of the Texas Election Code states that "[i]f a ballot indicates a straight-party vote and a vote for an opponent of one or more of that party's nominees, a vote shall be counted for the opponent and for each of the party's other nominees whether or not any of those nominees have received individual votes." Tex.Elec.Code Ann. § 65.007(c) (Vernon 1986).

In this case, Guerra did not show how these alleged overlapping marks were made or who allegedly made them. We find no evidence in the record that anyone tampered with these ballots. We hold that these ballots were properly counted for appellee. *See* Tex.Elec.Code Ann. § 65.007(c) (Vernon 1986). We overrule appellant's ninth point of error.

■ By his fourteenth point of error, Guerra complains that the trial court abused its discretion by not ordering the opening of the ballot boxes. He complains of Asterid Manning's testimony that appellee received only two votes from precincts three and nine. Guerra argues that the certified canvass shows that appellee received 321 votes from precincts three and nine.

Manning, the caller for precincts three and nine, testified that she counted "[a]bout 400–something" ballots on election day. At first, she stated that she did not know how many ballots had appellee's name written on them. However, she subsequently testified that she saw five mutilated ballots and that she thought that three of them were counted for "Garza." Also, when asked how many voters had written-in appellee's name in the "write-in section," she responded, "If I remember, there was one or two."

■ Section 221.008 provides in relevant part that "[a] tribunal hearing an election contest may cause secured ballot boxes ... used in the election to be unsecured to determine the correct vote count or any other fact that the tribunal considers pertinent to a fair and just disposition of the contest." Tex. Elec.Code Ann. 221.008 (Vernon 1986). The trial court, in an election contest, is vested with wide discretion in determining all matters necessary or proper to determine the contest's outcome, including whether the ends of justice require the opening of the ballot boxes and a recount of the ballots. *Villarreal v. Hedrick,* 579 S.W.2d 41, 45–6 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd); *Little v. Alto Indep. School Dist.,* 513 S.W.2d 886, 892 (Tex.Civ.App.—Tyler 1974, writ dism'd). An appellate court will not overturn the trial court's decision unless a clear abuse of discretion on a material issue is shown. *Villarreal,* 579 S.W.2d at 46; *Little,* 513 S.W.2d at 892.

In the instant case, Manning's testimony is clear. She testified that one or two people wrote-in appellee's name for County Attorney. The certified canvass, however, shows that appellee received more than 300 votes from precincts three and nine. We hold that the trial court abused its discretion by refusing to open the ballot boxes to determine the election's true outcome. *See Villarreal,* 579 S.W.2d at 45–6; *Little,* 513 S.W.2d at 892.

---

9. *A voter* who wrote the initials "G.G." could have intended to vote for any person with those initials, not only appellee. "Gues" and "Gue" are closer to the surname "Guerra" than to the surname "Garza."

We sustain appellant's fourteenth point of error.

Due to our disposition of the above points, we need not address the remaining points of error. TEX.R.APP.P. 90(a).

We REVERSE the judgment and RE-MAND the case to the trial court with instructions to open the ballot boxes and re-count the ballots in a manner consistent with this opinion. Upon recount, a write-in vote shall not be counted for appellee, even if written on the County Attorney's line, unless the voter's intent to vote for appellee is clearly ascertainable within the confines of this opinion.