COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




ZANE KIEHNE,


 Appellant,


v.



THOMAS E. JONES,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-07-00075-CV



Appeal from the


143rd Judicial District Court


of Loving County, Texas 


(TC# 06-12-753) 



O P I N I O N 


 Zane Kiehne, Appellant here and Contestee below, filed this accelerated appeal
challenging the trial court's determination of residency for voting purposes of six residents of
Loving County, Texas. (1) Appellant asks this Court to overturn the trial court's finding that three
of the challenged voters are Loving County residents and are eligible to legally vote in that
county, as well as the finding that three other challenged voters are not Loving County residents
and, as such, are not eligible to vote in Loving County.

 This appeal comes to us from a special election for County Commissioner Precinct Three. 
Loving County is the smallest county in our jurisdiction, a rural West Texas county bordering a
portion of eastern New Mexico. (2) Precinct Three covers the northwestern portion of Loving
County that runs along the border with New Mexico. The history and the record reflect that
Loving County is no stranger to curious and contested elections. Indeed, the author notes that in
the 1994 General Election, the Loving County voters were evenly split, 36 to 36, as they are often
wont to be, between the author and his election opponent, the Honorable Julia Vaughn.

 In September of 2006, Skeet Jones, County Commissioner Precinct Three, filed to run for
County Judge. This, in turn, resulted in a mid-term vacancy for his office. Zane Kiehne (Zane)
and Thomas E. Jones (Jones) both filed as write-in candidates for the vacant position.

 Zane and his cousin, Oliver Kiehne, own a large ranch which spreads over parts of Texas
and New Mexico. The main headquarters for the Texas part of the ranch is referred to as the
Kyle Ranch. Around the time Zane decided to run for commissioner, he deeded out several 2.5
acre portions of his property to various friends and family members. Zane also embarked on a
campaign of registering Loving County landholders as voters.

 On November 7, 2006, an election was held for the vacant county commissioner position. 
Zane prevailed over Jones by 1 vote, garnering 26 to Jones' 25 votes. Following the election,
Jones filed a petition in the district court contesting the results. (3) His petition alleged that over a
dozen of the votes cast were illegal because those voters were not residents of Loving County on
the date of the election. According to Jones, these twelve or so votes affected the outcome of the
election because those persons voted for Zane. Zane contended that Jones's claims were moot as
Zane had already been sworn in as commissioner. He further asserted counterclaims which also
challenged the legality of certain votes cast.

 A two-day bench trial was held on February 22 and March 14, 2007. At trial, the
residency status of most of the registered voters in Loving County was vigorously debated by the
parties. On March 14, 2007, the trial court rendered a judgment finding by clear and convincing
evidence that irregularities had occurred in the election that materially affected the outcome. 
Consequently, the trial court voided the prior election and ordered that a new election be
conducted. (4) The trial court's order listed by name the thirty challenged voters it found are not
residents and not eligible to vote in Loving County, and sixteen others that are residents of
Loving County and, therefore, are eligible. Zane filed this appeal and this Court ordered,
pursuant to Section 232.016 of the Texas Election Code, that the trial court's judgment be
suspended pending the outcome of the appeal. Tex.Elec.Code Ann. § 232.016.

 Zane urges this Court to review the trial court's determination of the eligibility of six
voters, three who presumably voted for Zane, and three the parties believe voted for Jones. (5) 
Jones, conversely, argues that even if Zane can show the trial court erred in its decisions on the
six voters, the error was harmless. Jones further reasons that this appeal is itself a wasted effort,
because the election was already determined to be void, and because there is no way of knowing
whether the six challenged voters will vote in the next election.

 Mr. Jones has suggested that the case before us is moot and there is agreement by
members of the panel that that may be in so far as future elections; however, a majority of the
panel believe that it is historically clear that this case presents an exception to the mootness
doctrine as being of the type of case frequently faced in Loving County, but likely to be without
an adequate remedy in the time that it takes for the justice system to address the situation.

Standard of Review

 We review a trial court's determination in an election contest for an abuse of discretion. (6)
Guerra v. Garza, 865 S.W.2d 573, 576 (Tex.App.--Corpus Christi 1993, writ dism'd w.o.j.);
Green, 836 S.W.2d at 209. A trial court commits an abuse of discretion if its decision is so
arbitrary and unreasonable that it rises to the level of a clear and prejudicial error of law. Walker
v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). In reviewing a court's factual determinations for an
abuse of discretion, we may not substitute our judgment for that of the trial judge. Id. We give a
great deal of deference to the trial court, as the trier of fact, in its determination of both the

credibility of the witnesses and the weight of their testimony. Slusher v. Streater, 896 S.W.2d
239, 245 (Tex.App.--Houston [1st Dist.] 1995, no writ); Green, 836 S.W.2d at 212. Moreover,
the trial court possesses the discretion to resolve any conflicts arising from the evidence. Alvarez
v. Espinoza, 844 S.W.2d 238, 246 (Tex.App.--San Antonio 1992, writ dism'd w.o.j.). 
Consequently, we may not overturn the trial court's judgment unless it is apparent from the
record that the trial court could have reached only one result. Walker, 827 S.W.2d at 839-40;
Tiller v. Martinez, 974 S.W.2d 769, 777 (Tex.App.--San Antonio 1998, pet. dism'd w.o.j.).

 In an election contest, the trial court's obligation is to ascertain whether the outcome is 

not a true outcome because, inter alia, illegal votes were counted. Tex.Elec.Code Ann.
§ 221.003(a)(1). An illegal vote is one that is not legally countable. Tex.Elec.Code Ann.
§ 221.003(b). Here, the trial focused on whether a number of the persons who voted in the
election were actually residents of Loving County.

 While the trial court made determinations on forty-six voters, this appeal concerns only
six particular individuals.

Residence

 The Texas Election Code defines residence as domicile; one's home and fixed place of
habitation to which one intends to return after any temporary absence. Tex.Elec.Code Ann.
§ 1.015(a)(Vernon 2003). It is to be determined in accordance with common-law rules, except as
may be defined elsewhere in the code. Tex.Elec.Code Ann. § 1.015(b).

 A person does not forfeit residency by leaving the person's home for temporary purposes
only. Tex.Elec.Code Ann. § 1.015(c). Likewise, a person does not acquire residency in a place
to which the person has come solely for temporary purposes, without the intention of making that
place home. Tex.Elec.Code Ann. § 1.015(d).

 To qualify as an eligible voter, a person must be a qualified voter the day the person
offers to vote, a resident of the territory in which the person desires to vote, and must meet any
other legal voting requirements for that particular election. Tex.Elec.Code Ann.
§ 11.001(a)(1)-(3)(Vernon Supp. 2006). If a person resides on property located in more than one
territory, the person can choose in which territory to claim residency. Tex.Elec.Code Ann.
§ 11.001(b). A qualified voter is a person who is 18 years of age or older, a United States
citizen, is not legally mentally incompetent, and not a felon who remains under court supervision, 
and who is a resident of Texas and a registered voter. Tex.Elec.Code Ann. § 11.002.

 The term residence can be difficult to define. Mills v. Bartlett, 377 S.W.2d 636, 637
(Tex. 1964); Slusher, 896 S.W.2d at 243. Its meaning hinges on the circumstances surrounding
the person involved and depends in great extent on the present intent of the individual. Mills,
377 S.W.2d at 637. Elements to be considered in determining a person's residence include
volition, intention, and action. Id. One element alone is insufficient to establish residency; there
must be a nexus amongst the elements to fix and determine a residence. Id. A temporary move
does not create a new residence, nor cause the loss of an old one. Alvarez, 844 S.W.2d at 247. 
Evidenciary factors such as presence and intent may be established by conduct such as where a
person sleeps and keeps personal belongings such as clothes and furniture. Id.

The Challenged Voters


 The trial court found that Alex Baeza, Andre Varela, and Holly Kiehne were not eligible
to vote in Loving County and ordered that their names be stricken from the voter roll. We
examine the trial court's finding regarding each voter to determine whether the trial court
committed an abuse of discretion. Tiller, 974 S.W.2d at 777.

Alex Baeza

 Baeza testified that he was born in Chihuahua, Mexico and raised in Jal, New Mexico. 
He recently gained his United States citizenship and registered to vote in Loving County, Texas. 
Baeza ranches in Chihuahua, Mexico, works as a ranch hand for Zane in Texas and New Mexico,
and also helps out on his father's ranch in Jal. He engages in horse trading on the side. As a
result of his varied work activities, Baeza frequently stays in different locations on different
nights, including the Kyle Ranch in Loving County. Tonya Rodriguez Kiehne testified that
Baeza would sometimes leave a bottle of Crown Royal at the Kyle Ranch and once left a shirt.

 Prior to the election, Baeza received 2.5 acres of land from Zane. He had not, at the time
of trial, established any kind of housing or structure on that property, but testified that he planned
to build horse corrals on the land at some point in the future. He holds a New Mexico driver's
license and his cellular telephone has a New Mexico number. Baeza testified that he registered
to vote in Loving County because he owned land there and that Zane had suggested to him that
he register there.

 There is sufficient evidence to permit the trial court to find that Baeza was not a resident
of Loving County at the time of the election. Although Baeza owns land and spends time in
Loving County, his testimony indicates that he also spends a significant amount of time at his
families' ranches in New Mexico and Chihuahua. He does not keep his personal belongings in
Loving County and holds a New Mexico driver's license. There is some evidence that Baeza
lacked both the intent and action required for residency. Accordingly, we find that the trial court
did not abuse its discretion in determining that Baeza was ineligible to vote in Loving County.

Andre Varela

 Varela is the twenty-year-old son of Tonya Rodriguez Kiehne. Varela grew up in Pecos,
but began visiting the Kyle Ranch about two or three years ago when his mother began dating
Zane. Tonya and Zane recently married. Varela registered to vote in Loving County in
September of 2006. His voter registration application shows his physical address as a vacant
parcel of land near the Kyle Ranch. His mailing address is in Pecos. According to Varela, he
registered to vote in Loving County because he was thinking about moving there one day.

 Varela testified that he currently lives in San Angelo. Although he is not presently taking
classes, he moved to San Angelo to attend school at Angelo State University. He works in San
Angelo at a job that does not allow him the flexibility to both attend classes and work. In order
to enroll in classes, he would need to find a different job. His current driver's license lists his
San Angelo address.

 Although Varela may have expressed the requisite intent, the trial court could have found,
on the above facts, that his presence in Loving County is too attenuated to establish residency. 
Therefore, we find that the trial court did not abuse its discretion in determining that Varela is not
a resident of or eligible to vote in Loving County.

Holly Kiehne

 Holly Kiehne testified at the trial telephonically. Holly is Zane's cousin. She testified
that she grew up in Midland, Texas and that she has never lived in Loving County. She visited
Loving County over a fourth of July holiday and enjoyed being there. Holly, jointly with her
sister, received 2.5 acres of land in Loving County from Zane. She registered to vote in Loving
County in October of 2006. Her voter registration application lists her residence as the vacant
land Zane deeded to her in Loving County. Her mailing address is in Stephenville, Texas.

 Holly testified that her job in sales with Smokeless Tobacco requires her to travel
throughout Texas, New Mexico, Oklahoma, Louisiana, and Arkansas, promoting their products
at places such as rodeos, NASCAR events, state fairs, and the like. She indicated that Loving
County would be an appealing place for her to live because most of her promotional events were
located either in Texas or New Mexico. Finally, she stated that she intended to move to Loving
County in a year and a half when she finished pursuing her master's degree.

 The trial court determined that on these facts, Holly was not a resident of Loving County
and was, thus, ineligible to vote there. The evidence is sufficient to support this finding. 
Accordingly, the trial court did not commit an abuse of discretion in finding Holly is not a
resident of and is not eligible to vote in Loving County.

John Carr, Mary Mozelle Jones Carr, and Catherine Carr

 The trial court held that Catherine Carr, John Carr, and Mary Mozelle Jones Carr are
eligible to vote in Loving County. As the Carrs are a family and their domiciles intertwined, we
consider the trial court's determination of their residency statuses together.

 John Carr testified that he was born and raised in Levelland, Texas. Levelland is located
in Hockley County. He and his wife, Mary Mozelle, own property and homes in both Hockley
County and Loving County. Mary Mozelle is originally from Loving County. Appellee Jones is
her brother. Mary Mozelle and John married in 1977. Catherine Carr is the adult daughter of
John and Mary Mozelle Jones Carr. John and Mary Mozelle raised their children in Hockley
County and have lived there for the past thirty-one years.

 In 1995, John and Mary Mozelle put a mobile home on their Loving County property. 
They registered to vote in Loving County in 1996. Their registration, however, was rejected by
the voter registrar, Sheriff Putnam. They contested the rejection in the district court, which
overruled the sheriff and allowed John and Mary Mozelle to register to vote in Loving County. 
John testified at trial that he has kept his registration active since that time and has regularly
voted in Loving County elections. He testified that he registered to vote there because he has a
home and planned to have a future and retire there. He indicated that he had not registered to
vote anywhere other than Loving County since 1995.

 John previously farmed and owned a trucking business but currently works as a division
manager for a lubricant supply company selling various types of lubricants to businesses in the
western portion of Texas. He testified that this activity will mean him spending more time in
Loving County in the near future.

 During the last eleven years, the Carrs have been making investments in their property in
Loving County. They cleared mesquite and planted peach trees and tried to grow different types
of grass. They also put in a well for water for cattle and an irrigation system. The Carrs sold
their farm in Hockley County, and have placed their Hockley County home on the market.

 Mary Mozelle stated that it was their intent to live in Loving County. She is already in
Loving County quite a bit, as her parents still live there and she helps her family with their ranch. 
She reasoned that living in Loving County was a logical choice as her parents were getting older
and she and her husband were no longer farming in Hockley County.

 Catherine Carr testified about photographs introduced into evidence that show the inside
and outside of the Carrs' Loving County mobile home. The photographs show that the inside of
the home is fully furnished and decorated. Catherine testified that she lived at the mobile home
during the summer when she was not taking college classes, and during that time worked in
Loving County. She has considered the Loving County home her residence throughout her
schooling. She also testified that between 1997 when she graduated from high school and the
time of trial, she had gone to school in different locations, and had held temporary jobs in
different locations, including Utah.

 Much of the testimony and evidence Zane introduced at trial dealt with John, Mary
Mozelle, and Catherine Carr and the state of their mobile home. He brought in tax records for
the Carrs' Hockley County home showing they receive a homestead exemption on that property. 
He introduced a Soil Survey of Loving and Winkler Counties, Texas, published by the United
States Department of Agriculture, as evidence that the soil on the Carrs' Loving County property
was unsuitable for cultivation, apparently to refute the Carrs' testimony that they are growing
fruit trees and grass. To show that the Carrs infrequently visited Loving County, he introduced
photographs of their mobile home. He even sent the constable to inspect the outside of the
mobile home and check the amount of propane in the tank.

 Despite there being some evidence to the contrary, the trial court's finding that the Carrs
are residents of Loving County and eligible to vote is supported by some evidence. John and
Mary Mozelle both demonstrated intent and presence. Although there is evidence that the Carrs'
Hockley County home is their primary residence, there is also evidence that the Carrs' intent is to
make Loving County their permanent home. Catherine Carr also provided evidence of intent and
presence. She testified in detail about living in the mobile home and stated that she considered
Loving County her residence while she is away at school.

 Even if there is conflicting evidence, as long as there is some evidence that supports the
trial court's decision, we may not overturn the trial court's ruling. Tiller, 974 S.W.2d at 777. 
There is sufficient evidence here to support the trial court's findings. Therefore, we find that the
trial court did not abuse its discretion in determining that John Carr, Mary Mozelle Jones Carr,
and Catherine Carr are residents of Loving County and eligible to vote in Loving County.

 Because we find that the trial court did not commit an abuse of discretion, we will affirm
the judgment of the trial. We make no comment on the eligibility of voters in the rerun election,
or on any collateral estoppel issue that may arise in the future.




June 21, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.

Carr, J., Dissenting




D I S S E N T I N G O P I N I O N



 The election results for the November 2006 election show that 51 votes were cast in the
election for Loving County Commissioner, Precinct 3, all by write-in. Zane Kiehne received 26
votes and Thomas E. Jones, 25. In the course of Jones' election contest, the trial court found that
30 of those votes, a clear majority, were cast by ineligible voters. (7) Acting pursuant to the
authority given it in Tex.Elec.Code Ann. § 221.009(b), the trial court set the election aside and
ordered that a new election be conducted. No party has appealed the Section 221.009(b) portion
of the trial court's order.

 By his appeal, Zane seeks, instead, to remove three names (Baeza, Varela, and Holly
["the Kiehne voters") (8) from the list of voters who were found to have been ineligible in
November 2006. The only other affirmative relief which he seeks is a ruling by this Court that
three voters found eligible by the trial court should have been found to have been ineligible. (9)

 Jones correctly argues that Zane's appeal is moot. If, as Zane urges, the three "Kiehne
voters" are added back to the eligibility list as of November 2006, the number of voters found to
have been ineligible will be reduced to twenty-seven, a number which is still ample to have
changed the outcome of the election. (10)

 Given Loving County's history of close and contentious elections, the majority believe
that this Court should opine on some of the issues raised in this proceeding, even though they are
not necessary for our disposition of this appeal, because the parties will likely be back here after
the rerun election. (11) The majority's premise in this regard may well prove correct, but we have no
power to speculate about future events, in order to offer our advise to the parties. In Brownsville
Indep. Sch. Dist. Bd. of Trs. v. Brownsville Herald, 831 S.W.2d 537, 538-39 (Tex.App.--Corpus
Christi 1992, no writ), the Court observed:

 Courts are created not for purposes of deciding abstract or academic
questions of law or to render advisory opinions, but solely for judicial
determination of presently existing disputes between parties in which effective
judgment can be rendered.


[Emphasis in original](quoted, without supplied emphasis, in Caddel v. Bright, No. 08-03-00336-CV, 2004 WL 1172337, at *1 (Tex.App.--El Paso May 25, 2004, no pet.)(not designated
for publication)).

 Neither party has appealed the trial court's order directing a new election. Therefore,
nothing we decide herein regarding the eligibility of the Kiehne voters or the Carr family can
affect the results of the 2006 election; by a final and unappealed order of the trial court, those
results are null and void. Even more fundamentally, nothing we decide today with regard to any
"presently existing" dispute can have any effect on the future rerun election.

 With regard to one's eligibility to vote in Texas, the Legislature has provided:

 § 11.001. Eligibility to Vote


 (a) Except as otherwise provided by law, to be eligible to vote in an
election in this state, a person must:

 (1) be a qualified voter as defined by Section 11.002 on the day
the person offers to vote;


 (2) be a resident of the territory covered by the election for the
office or measure on which the person desires to vote;


 (3) satisfy all other requirements for voting prescribed by law
for the particular election.


 (b) For a person who resides on property located in more than one
territory described in Subsection (a)(2), the person shall choose in
which territory the residence of the person is located.


Tex.Elec.Code Ann. § 11.001 [emphasis added]. Therefore, a person who was ineligible to
vote on November 7, 2006, may or may not still be ineligible to vote today. (12) Neither of those
facts is determinative of the controlling question, which is whether he will be ineligible on the
day he offers to vote in the rerun election.

 To vote in the upcoming election, a person must be an eligible voter in Loving County
and a resident (13) of Precinct 3 on the day he offers to vote. Neither this Court nor either of the
candidates can predict with assurance who will be eligible to vote at that time.

 I respectfully believe that this appeal presents no justiciable issue to this Court. I would
therefore dismiss the appeal and return the proceeding to the trial court for further proceedings
consistent with its earlier order.



June 21, 2007

 KENNETH R. CARR, Justice
1. Appeals arising out of election contests have precedence in appellate courts.
Tex.Elec.Code Ann. § 231.009 (Vernon 2003).
2. http://www.census.gov/popest/counties/tables/CO-EST2006-01-48.csv
3. District courts have exclusive jurisdiction over election contests in county commissioner
races. Tex.Elec.Code Ann. § 221.002(a).
4. If a trial court finds that the number of illegal votes is equal to or exceeds the number of
votes needed to change the outcome of the election, the court is authorized to void the election
without attempting to determine how individual voters voted. Tex.Elec.Code Ann.
§ 221.009(b)(Vernon 2003); Green v. Reyes, 836 S.W.2d 203, 209 (Tex.App.--Houston [14th
Dist.] 1992, no writ). At trial, the parties agreed a new election should be held. Zane does not
appeal that part of the trial court's judgment.
5. Zane also requests that we issue an opinion explaining, for future clarification, what the
residency requirements are pursuant to the Texas Election Code. By making this request, Zane is
asking this Court to render an advisory opinion, something we lack the jurisdiction to do. Texas
Ass'n of Business v. Texas Air Control Bd., 852 S.W.2d 440, 444 (Tex. 1993).
6. Zane urges this Court to review the trial court's judgment using a de novo standard of
review. He does not, however, point us to any authority, nor have we encountered any, to
suggest that any standard other than abuse of discretion is appropriate in an appeal from a trial
court's judgment in an election contest.
7. No party has challenged the trial court's determination that twenty-seven of the voters,
whose names are specified in the trial court's order, were ineligible to vote in Loving County in
November 2006. The trial court's finding as to those individuals' eligibility as of that date is
therefore final. Similarly, its unchallenged determination that thirteen others (sixteen, excluding
three members of the Carr family discussed below) were eligible is likewise final.
8. Although the trial court found it unnecessary to order any voter to identify under oath
the candidate for whom he voted, the parties have assumed that the three "Kiehne voters" voted
for Zane, and I will work on that assumption.
9. Zane asks this Court to add three members of the Carr family (husband, wife, and adult
daughter) to the list of those whom the trial court found to have been ineligible. I will likewise
accept the parties' assumption that all three members of the Carr family voted for Jones, who is
Mrs. Carr's brother. (The undersigned is not related to this Carr family.)
10. In a "best case" scenario for Zane (based on the issues he has brought forward to this
Court), to wit, deeming the three Kiehne voters to have been eligible and deleting the votes of the
Carr family members, Zane's lead would have been 26-22.
11. This is an obvious effort to invoke the "capable of repetition, yet evading review"
exception to the mootness doctrine. The Texas Supreme Court has limited application of this
exception to lawsuits which "challenge unconstitutional acts performed by the government." 
General Land Office of the State of Texas v. OXY U.S.A., Inc., 789 S.W.2d 569, 571 (Tex. 1990). 
No such constitutional challenges are made in this proceeding. Moreover, if any candidate
chooses to contest the results of the rerun election, Texas law provides ample opportunity for him
to seek review by way of appeal.
12. Of course, the converse is also possible. One who is currently eligible to vote may
change his circumstances such that he becomes ineligible to do so by the date of the new
election.
13. As defined, inter alia, in Section 11.001(b).